FISCHER, SPUHL, HERZWURM & AS-
SOCIATES, INC., et al., Appellants,

v.

FORREST T. JONES & COMPANY, et
al., Respondents.

No. 60720.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1979.

Rehearings Denied Oct. 10, 1979.

Harvey M. Tettlebaum, Jefferson City, Theodore S. Schechter, Schechter & Zerman, Clayton, for appellants.

Cullen Coil, Carson, Monaco, Coil & Riley, Jefferson City, John T. Martin, William G. Zimmerman, Robert E. Northrip, Shook, Hardy & Bacon, Kansas City, Forrest T. Jones & Co., Inc., David A. Yarger, Woolsey & Yarger, Versailles, Alex Bartlett, Hendren & Andrae, Jefferson City, American Health & Life Ins., Veryl L. Riddle, John J. Hennelly, Jr., Lee H. Wagman, St. Louis, Robert J. Quigley, Eldon, New York Life & Health Ins., for respondents.

John D. Ashcroft, Atty. Gen., Roger Bern, Nanette K. Laughrey, Asst. Attys. Gen., Jefferson City, for amicus curiae.

SEILER, Judge.

This is an appeal in a suit wherein plaintiffs sought damages for lost commissions in the sale of insurance allegedly caused by defendants' acts in restraint of trade, claimed to be unlawful under both the former and new Missouri antitrust statutes, and for tortious interference with plaintiffs' business relations. The trial court held that the former antitrust law did not apply to the types of insurance involved in this case, that all activities of the insurance industry are exempt from the Missouri antitrust law of 1974 under § 416.041.2, RSMo 1978, and that plaintiffs failed to assert a cause of action for tortious interference with business relations. The trial court granted defendants' motion to dismiss the actions. Plaintiffs appealed and filed a motion to transfer the case prior to opinion from the court of appeals, western district, to this court under rule 83.06. We granted the motion to transfer because of the general interest and importance of the questions presented and we will treat the case as though here on original appeal. Mo.Const. art. V, § 10.

Appellants are insurance brokers who filed a petition in the circuit court of Miller County alleging that over the years respondents had violated § 416.010, RSMo 1969, of the former antitrust statute and § 416.031, RSMo 1978, of the new antitrust statute, by engaging in unlawful contracts, combinations, undertakings or conspiracies that constitute an unreasonable restraint of trade or commerce. Appellants also allege that respondents' activities constituted tortious interference with appellants' business relations. Respondents are as follows: Forrest T. Jones & Co., an insurance brokerage company; Missouri State Teachers Association (MSTA), a corporation organized to represent the interests of teaching and non-teaching personnel of elementary and secondary schools in Missouri; American Health and Life Insurance Co., Fidelity Security Life Insurance Co., and New York Life Insurance Co., past or present underwriters of group insurance coverage for teachers employed by Missouri school districts; Forrest T. Jones, Dorothy M. Jones, Richard F. Jones, and M. M. Morrison, officers and directors of Forrest T. Jones & Co.; J. A. Kinder, officer, and Everett Keith, former officer of MSTA; James E. Woodruff, licensed insurance agent and director of the MSTA Group Insurance Plan; and, Warren P. Gardner, officer and director of Fidelity Security Life Insurance Co.

Specifically, appellants allege in their petition, among other things, that respondent Forrest T. Jones & Co., had made gifts to and provided entertainment for persons in positions of authority with MSTA or its affiliated groups, that respondent Forrest

T. Jones & Co. had entered into agreements with MSTA and its agents and school districts to withhold necessary statistical data, or to provide incomplete or false data, concerning MSTA members employed by particular school districts from potential competitors of Forrest T. Jones & Co., and that Forrest T. Jones & Co. entered into agreements with school districts pursuant to which districts could obtain group accident and health insurance only if they also purchased group life insurance. Appellants allege that Forrest T. Jones & Co. acted as agents of American Health and Life Insurance Co., Fidelity Security Life Insurance Co., and New York Life Insurance Co. in the above anticompetitive activities.

On appeal, appellants contend that the trial court improperly dismissed the action. Appellants submit that the former antitrust statute did apply to life, health and accident insurance, and that § 416.041.2 of the new statute does not exempt entire industries. Rather, appellants contend, § 416.041.2 of the new statute merely codifies the "state action" doctrine of federal antitrust law and exempts only specific anticompetitive activities and arrangements in fact expressly approved or regulated by the state. Appellants contend further that the alleged anticompetitive activities of the respondents were not expressly approved or regulated by the division of insurance and are therefore outside of the scope of the exemption granted in § 416.041.2. Moreover, appellants argue that they have stated a cause of action for respondents' tortious interference with appellants' business relations. Respondents answer that the former antitrust statute was limited in its application to activities related to products, commodities, articles or things and did not apply to insurance, except for the express inclusion of insurance of property against loss or damage by fire, lightning or storm in the statute. As to the new antitrust statute, respondents answer that the statutes relating to the regulation and supervision of the insurance industry are an exclusive and complete code. Accordingly, respondents submit, the insurance industry's activities are regulated by the state and therefore are exempt under § 416.041.2. Respondents also submit that the appellants' failure to allege the existence of a contract or a pre-existing business relationship is fatal to the claim of tortious interference with appellants' business relations. We will discuss these issues in the order that they are set out above.

■ The "old" antitrust statute, originally enacted in 1907, did not apply to restraints in trade occurring in connection with service activities. Almstead and Tyler, State Antitrust Laws: New Directions in Missouri, 39 Mo.L.Rev. 489, 489–90 (1974). The statute applied only to activities relating to products, commodities, articles and things. See §§ 416.010 through 416.040, RSMo 1969, and Bond, The Antitrust Laws of Missouri, 27 J.Mo.B. 61, 62 (1971). Section 416.040 of the old antitrust statute, however, expressly included insurance of property against loss or damage by fire, lightning or storm within the purview of the statute. The statute did not otherwise apply to services or other types of insurance, such as the life, health and accident insurance contracts involved in this case. The trial court correctly held that the old antitrust statute did not apply to the insurance contracts and activities which are the subject of this litigation.

Arguably in part because the old antitrust statute did not apply to service contracts, but whatever the reason, the General Assembly enacted the Missouri antitrust law of 1974 (the Act), §§ 416.011 to 416.161, RSMo 1978, with a much broader scope of application. See Almstead and Tyler, 39 Mo.L.Rev. at 490–91. The Act closely parallels provisions of the Sherman and Clayton Acts of federal antitrust law. Section 416.031.1 of the Act makes unlawful every contract, combination or conspiracy in restraint of trade or commerce, conduct which is prohibited by § 1 of the Sherman Act, 15 U.S.C. § 1 (1976). Section 416.031.2 of the Act makes unlawful monopolization, attempted monopolization, and conspiracy to monopolize trade or commerce, conduct which is prohibited by § 2 of the Sherman Act, 15 U.S.C. § 2 (1976). Section 416.031.3

of the Act makes unlawful specified acts that substantially lessen competition or tend to create a monopoly, conduct which is prohibited by § 3 of the Clayton Act, 15 U.S.C. § 14 (1976). Like the federal antitrust laws, the Act applies to "any individual, corporation, firm, partnership, incorporated or unincorporated association of any other legal or commercial entity", § 416.-021(2), RSMo 1978, and "any economic activity involving or relating to any commodity or service." § 416.021(4), RSMo 1978.

The Act expressly exempts, with some qualifications, labor, agricultural and horticultural organizations in § 416.041.1, RSMo 1978, the same organizations expressly exempted from federal antitrust laws by § 6 of the Clayton Act, 15 U.S.C. § 17 (1976). In § 416.041.2, the Act exempts "activities or arrangements expressly approved or regulated by any regulatory body or officer acting under statutory authority of this state or of the United States." At issue is whether this provision is a codification of the "state action" doctrine of federal antitrust law, which exempts anticompetitive conduct which is required or approved by state law, or whether, as respondents contend, this provision exempts the insurance industry because its activities are regulated by state law.

■ The Act directs that its provisions "shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes." § 416.141, RSMo 1978. The legislature, through this section and the Act's substantive provisions based on federal antitrust laws, intended to provide a ready body of precedent for interpreting the law and a single standard of business conduct already known and acquiesced in by businesses in Missouri. *See* Almstead and Tyler, 39 Mo.L.Rev. at 519.

■ The United States Supreme Court has spoken clearly as to the construction to be given to exemptions to the federal antitrust laws and therefore provides guidance for the construction to be given to exemptions under the Act. In *Abbott Laboratories v. Portland Retail Druggist Association, Inc.*, 425 U.S. 1, 96 S.Ct. 1305, 47 L.Ed.2d

537 (1976), the court most recently stated that antitrust laws are to be construed liberally and exceptions from their application are to be construed strictly. 425 U.S. at 11, 96 S.Ct. 1305. In another recent case, the Supreme Court addressed the question whether a congressional regulatory scheme serves as an implied exemption from federal antitrust law. "Implied antitrust immunity is not favored, and can be justified only by a convincing showing of clear repugnancy between the antitrust laws and the regulatory system." *United States v. National Association of Securities Dealers, Inc.*, 422 U.S. 694, 719–20, 95 S.Ct. 2427, 2443, 45 L.Ed.2d 486 (1975). In construing the Act in harmony with these ruling judicial interpretations of comparable federal antitrust statutes, we read § 416.041.2 narrowly and find that it does not exempt the insurance industry solely because its activities are regulated. Moreover, we find that respondents have not shown that an implied exemption is justified by clear repugnancy between the antitrust laws and the regulatory system.

As noted above, the Act expressly applies to "any individual, corporation, firm, partnership, incorporated or unincorporated association or any other legal or commercial entity" and to "any economic activity involving or relating to any commodity or service." §§ 416.021(2), (4), RSMo 1978. In the exemption in § 416.041.2, the legislature chose the words "activities or arrangements expressly approved or regulated". To say that certain activities, otherwise proscribed by the Act, are exempt because they are approved by the state or in compliance with the legislature's regulatory scheme for a given industry, is quite a different matter from saying that because an industry is regulated, its activities are exempt from the Act, irrespective of whether the activities are in compliance with or in violation of the regulations applicable to the industry. Nowhere in the Act is there an express exemption for regulated businesses and industries, or the insurance industry in particular, although in § 416.041.1 the legislature specifically exempted agricultural, horticul-

tural and labor organizations from the purview of the Act. Rather than interpret the scope of the exemption in § 416.041.2 so broadly as to exempt by mere implication potentially hundreds of businesses and industries, we adhere to the narrow construction given to exemptions to the federal antitrust statutes, as we are directed to do by § 416.141 of the Act.

■ The exemption in § 416.041.2 represents a codification of the "state action" doctrine of federal antitrust law, first enunciated by the United States Supreme Court in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).[1] In *Parker*, the court held that while a state may not give immunity to those who would violate the Sherman Act, legitimate statutory measures to solve economic problems through regulatory schemes will not violate federal antitrust laws despite their anticompetitive features. The court, in *Parker*, upheld a California statute that adopted a mandatory marketing and pricing program for the state's raisin crop. Since *Parker*, the "state action" exemption has been further explained by recent Supreme Court decisions.

In *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), the court found that the "state action" exemption did not apply to the Virginia Bar Association's minimum fee schedule and therefore its enforcement by the bar association constituted unlawful price fixing under the Sherman Act. The court states that "[t]he threshold inquiry in determining if an anticompetitive activity is state action of the type that the Sherman Act was not meant to proscribe is whether the activity is required by the State acting as sovereign." 421 U.S. at 790, 95 S.Ct. at 2015. And in *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1966), the Supreme Court directly addressed the issue of implied exemptions from the federal antitrust laws through state regulation. In *Cantor*, the court found that despite the state's participation in and approval of a light bulb exchange program, the "state action" exemption did not apply and the program restrained competition in violation of the Sherman Act. The court explained that it "has consistently refused to find that regulation gave rise to an implied exemption without first determining that exemption was necessary in order to make the regulatory [a]ct work, 'and even then only to the minimum extent necessary.'" 428 U.S. at 597, 96 S.Ct. at 3121.

■■ Under the Supreme Court's interpretation of the "state action" exemption in *Goldfarb* and *Cantor*, which we use as guidance in construing the exemption in § 416.-041.2 of the Act, it is clear that the alleged anticompetitive conduct of respondents does not fall within the scope of the exemption. There is no question that the state does not require the anticompetitive conduct alleged. Nor does this case involve "activities or arrangements expressly approved" by the state. Nor is the alleged anticompetitive activity even arguably insulated on the ground that it is in compliance with state statutes regulating the insurance industry. In sharp contrast, respondents contend that they are exempted from the Act because their allegedly anticompetitive conduct may violate insurance regulations that prohibit unfair practices and fraud under §§ 375.930 to 375.948, RSMo 1978. Respondents thus contend that these prohibitions against unfair practices and fraud give rise to an implied exemption from the Act for such unlawful activities. Under the "state action" exemption, anticompetitive activities are exempt if they are compelled by state regulations. The "state action" doctrine does not relieve antitrust liability for anticompetitive conduct which also violates state regulations for particular industries. This is not a case where an implied exemption from the Act is necessary "in order to make the regulatory [a]ct work" under the "state action" doctrine as articulated in *Cantor*. 428 U.S. at 597, 96 S.Ct. at 3121.

---

1. *See generally* Comment, The Missouri "State Action" Antitrust Exemption, 45 U.M.K.C.L. Rev. 257 (1976).

After applying "ruling judicial interpretations of comparable federal antitrust statutes", which we are directed to use as guidance in our construction of the Act by § 416.141, we find that the alleged anticompetitive activities at issue do not fall within the scope of the "state action" exemption in § 416.041.2. The decision of the trial court in granting the respondents' motion to dismiss appellants' cause of action under the Act was in error.

■ The last issue in the case at bar is whether appellants' petition pleaded facts sufficient to state a claim upon which relief can be granted for tortious interference with business relations. Respondents contend that appellants must allege the existence of a contract or a pre-existing business relationship as an element of the cause of action. In *Downey v. United Weatherproofing, Inc.*, 363 Mo. 852, 253 S.W.2d 976, 980 (1953), this court held that a reasonable expectancy of commercial relations is protected.

> "The right of recovery for inducing a breach of contract is but one instance of the protection which the law affords against unjustified interference in business relations. An existing contract may be the basis for greater protection, but some protection is appropriate against unjustified interference with reasonable expectancies of commercial relations even where an existing contract is lacking."

Respondents cite *Saloman v. Crown Life Insurance Co.*, 536 F.2d 1233 (8th Cir.), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976) as authority for their contention that a contract or a pre-existing business relationship is a necessary element of a claim of tortious interference with business relations. In *Saloman*, the Eighth Circuit correctly stated the elements of a cause of action for tortious interference with business relations under Missouri law:

> "(1) A contract or a valid business relationship *or expectancy* (not necessarily a contract);
> (2) Defendant's knowledge of the contract or relationship;
> (3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;
> (4) The absence of justification; and,
> (5) Damages resulting from defendant's conduct."

536 F.2d at 1238 (emphasis added). Respondents submit that, in any event, the trial court's dismissal of appellants' petition was proper because appellants failed to show the existence of a reasonable expectancy of commercial relations or that respondents had knowledge of the appellants' expectancy of commercial relations.

In *Scheibel v. Hillis*, 531 S.W.2d 285 (Mo. banc 1976), this court held that a petition is sufficient against a motion to dismiss if it invokes the substantive principles of law which entitle plaintiff to relief and alleges facts which inform the defendant of what plaintiff will attempt to establish at trial. 531 S.W.2d at 290. We believe that appellants have met this minimum requirement. On its face, count IV of appellants' petition alleges that appellants had an expectancy of business relations, as it claims interference with "actual and potential business relations." The count also alleges that respondents' acts were intentional and without justification, and that appellants have suffered damages as a result of respondents' intentional conduct. The only element of tortious interference with business relations which is not stated in count IV is respondents' knowledge of appellants' expectancy of business relations. Count IV does, however, incorporate by reference the allegations in the other counts of the petition which charge that respondents acted unlawfully in restraint of trade. These allegations supply the knowledge element necessary for the tort.

Appellants allege that respondents conspired with school districts and entered into illegal "tying" agreements, under which districts could obtain group accident and health insurance only if they purchased group life insurance, and other anticompetitive agreements that caused school districts to refuse to deal with appellants and other competitors of respondents. Appellants

also allege that respondents gave financial contributions and gifts to school board members and employees to shut out respondents' competitors in the insurance market for the 80,000 employees of the state's school districts. While these allegations do not specifically state that respondents knew of appellants' individual expectancies of commercial relations, the allegations claim that respondents knew their activities tortiously interfered with the business relations of respondents' potential competitors, and that appellants were potential competitors.

Appellants' petition invokes the substantive principles of law which entitle appellants to relief and informs the respondents of what appellants will attempt to establish at trial. As we stated in *Scheibel*:

"Plaintiff could be compelled by motion . . . to plead more specifically or by interrogatories to give more information . . . but this does not mean the petition does not state a cause of action in its present form. A pleader is required to state only the ultimate facts and it is not necessary to plead the facts or circumstances by which the ultimate facts will be established."

531 S.W.2d at 290. Appellants stated a cause of action for tortious interference with business relations and the trial court erred in dismissing count IV of appellants' petition for failure to state a claim upon which relief can be granted.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

RENDLEN and MORGAN, JJ., and WELBORN, Special Judge, and FINCH, J., concur.

BARDGETT, C. J., concurs in part and dissents in part in separate opinion filed.

DONNELLY, J., not sitting.

WELLIVER and HIGGINS, JJ., not participating because not members of the court when cause was submitted.

BARDGETT, Chief Justice, concurring in part and dissenting in part.

I concur in the principal opinion except as to that part which reaffirms earlier holdings that the "old" antitrust statutes, sections 416.010–416.040, RSMo 1969, do not apply to life, health or accident insurance contracts. I agree that the earlier cases so held but I believe those cases were wrong. In my opinion, the "old" antitrust statutes which play some part in the instant case apply to insurance industry, company, or brokerage activities in connection with all forms of insurance. I would therefore reverse and remand for further proceedings on all counts.