**Marlou DAVIS, Plaintiff–Appellant,**

**v.**

**Ronald L. CARMICHAEL, et al.,**
**Defendants–Respondents.**

**No. 53773.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 19, 1988.
Motion for Rehearing and/or Transfer
to Supreme Court Denied Aug. 24, 1988.

Amelung, Wulff & Willenbrock, Robert A. Wulff, St. Louis, for plaintiff-appellant.

David A. McMahon, St. Louis, for Carmichael.

Veryl L. Riddle, St. Louis, for Kennametal.

Merle L. Silverstein, Clayton, for ITL.

SIMON, Presiding Judge.

Plaintiff, Marlou Davis, appeals from the sustaining of motions to dismiss Counts II and III of his three count amended petition for misrepresentation against Ronald L. Carmichael, Kennametal, Inc. (Kenname-

tal), and Industrial Testing Laboratories, Inc. (ITL). The trial court sustained Kennametal's motion to dismiss Count II and ITL's motion to dismiss Count III. The orders sustaining the motions were designated as final, but did not state the reason for sustaining the motions. Carmichael's motion to dismiss Count I was denied.

On appeal, plaintiff contends that the trial court erred in: (1) sustaining Kennametal's motion to dismiss Count II of plaintiff's amended petition because it states a claim for relief against Kennametal and plaintiff does have legal capacity to sue, and (2) sustaining ITL's motion to dismiss Count III of plaintiff's amended petition because it states a claim for relief against ITL. We affirm in part and reverse in part.

Our standard of review as to the sustaining of a motion to dismiss is well established. The sufficiency of the petition is construed liberally and all facts properly pleaded are taken as true and are accorded every reasonable intendment as a valid statement of a claim. *Greening v. Klamen*, 652 S.W.2d 730, 732[1, 2] (Mo.App. 1983).

In addition to plaintiff's amended petition, we also review any attached exhibits in making our determination. Exhibits attached to the amended petition are a part thereof for all purposes. Missouri Supreme Court Rule 55.12; *Travelers Indemnity Co. v. Chumbley*, 394 S.W.2d 418, 419[4] (Mo.App.1965).

Since the trial court did not specify in its ruling the basis for the dismissal of Counts II and III, we will presume it was on the grounds stated in Kennametal's and ITL's motions to dismiss. Further, plaintiff's points on appeal recite certain grounds set forth in the motions to dismiss, therefore, we shall confine our review to the grounds contained in plaintiff's points on appeal.

In all counts of plaintiff's amended petition, he alleges that on October 1, 1984, Strategic Earth Resources Corporation, Inc. (SERC) was incorporated in the State of Colorado for the purposes of mining, engineering, and medical purposes. On February 16, 1985, the stock of SERC was issued at the first corporate meeting; 51% of the issued stock went to Daniel Kinsley, president of SERC, and 49% of the issued stock went to plaintiff, secretary of SERC. Plaintiff is a resident of Missouri. Kennametal is a foreign corporation presently doing business in Pennsylvania and lawfully registered in the State of Missouri. ITL is a corporation presently doing business in Missouri.

In Count II, plaintiff alleges that: 1) on November 28, 1984, SERC and Kennametal entered into an agreement whereby Kennametal was to purchase and take delivery from SERC certain amounts of tungsten concentrate produced from deposits at Rocky Mountain Mineral Claims Number One to Number Twenty–One. A copy of the agreement is attached as Exhibit B to the petition; 2) through said agreement, Kennametal represented to plaintiff that the claim would produce quantities of tungsten in excess of three thousand short ton units per month and the claim failed to produce such quantities; 3) said representation was material to plaintiff entering into the agreement and to plaintiff investing large sums of money in the claim and SERC; 4) Kennametal knew or should have known plaintiff would act on said representations; 5) plaintiff was ignorant of the amount of tungsten which said claim would produce and this information was undiscoverable by him; 6) plaintiff relied on said representation; 7) plaintiff had a right to rely upon Kennametal's representations in that Kennametal had a duty to speak based upon its superior knowledge as to the amount of tungsten which could reasonably be foreseen to be produced from said claim; 8) plaintiff was thereby damaged by investing large sums of money in developing said claim and in SERC. Further, plaintiff alleges that he would not have invested large sums of money in the development of that claim but for the misrepresentation made by Kennametal by entering into said agreement.

In Count III plaintiff alleges that: 1) on April 1, 1985, ITL provided a test report to plaintiff containing information as to the relative amounts of tungsten present in the

claim. The test report is attached to the petition as Exhibit C; 2) on April 9, 1985, ITL provided plaintiff with a second test report containing information as to the relative amounts of gold and silver present in the claim. The test report is attached to the petition as Exhibit D; 3) both test reports represented quantities of tungsten, gold, and silver present in the claim; 4) the test reports represented to plaintiff that said claim would produce quantities of tungsten, gold, and silver as listed in said reports as a percentage; 5) said claim failed to produce such quantities; 6) said reports were material to plaintiff investing large sums of money in said claim and in SERC. Plaintiff further alleges that ITL had a duty to speak based on its superior knowledge as to the amounts of tungsten, gold, and silver which could reasonably be foreseen to be produced by the claim. Plaintiff was damaged by relying upon ITL's representations made in the test reports in that he thereafter invested large sums of money in the claim and in SERC.

In his first point, plaintiff argues that the trial court erred in sustaining Kennametal's motion to dismiss Count II. Plaintiff contends he has standing to sue in that the agreement between Kennametal and SERC represented to plaintiff that the claim was capable of producing those quantities of tungsten set forth in the agreement. Plaintiff, relying upon the amounts represented in the agreement, invested large sums of money in the claim and in SERC.

The agreement, attached as Exhibit B of plaintiff's amended petition, sets forth the following terms:

Seller agrees to deliver and Buyer agrees to purchase a minimum of 3,000 and a maximum of 4,000 short ton units (stu's) per calendar month for 60 consecutive months. It is anticipated that deliveries will commence in March of 1985. The quantity to be delivered and accepted prior to 7/1/85 should not exceed 9,000 stu's. Buyer will also have the option to take delivery of any quantity or part of such quantity produced which exceeds the monthly quantity due under this contract and at the same terms. If, for reasons beyond the control of the Seller, a scheduled delivery should be delayed or be less than the minimum quantity due for that particular month, the Buyer shall have the option to call for delivery of the unshipped quantity during the following month; but the price for the material so delayed shall be that pertaining to the originally scheduled month delivery.

The agreement is between SERC and Kennametal. It was signed by Daniel K. Kinsley, president of SERC, and by Richard C. Hendricks, vice president and general manager of Kennametal. Plaintiff also signed the agreement as follows: "Signing for Strategic Earth Resources, Inc., Dr. Marlou D. Davis, Secretary of Strategic Earth Resources, Inc., signing for the corporation." Plaintiff signed the agreement in his capacity as secretary of SERC and not as an individual party to the agreement.

Plaintiff relies on *Greening v. Klamen*, 652 S.W.2d at 730–33, for the proposition that individual stockholders have a cause of action on an individual basis against a third party for loss sustained by the individual stockholder. In *Greening*, the plaintiffs alleged in their petition against certain attorneys for breach of contract, legal malpractice and libel that they paid the attorney a retainer fee to represent their individual interest in addition to the interest of the corporation. Thus, the factual situation in *Greening* is distinguishable from the present case. Here, there is no allegation as to an individual contractual relationship with Kennametal. Therefore, plaintiff's reliance on *Greening* is misplaced.

We find *Jones v. Rennie*, 690 S.W.2d 164, 165–6[1–2] (Mo.App.1985), to be informative. In *Jones*, Jones incorporated and operated Confection Product Corporation (CPC) and owned 78% of the stock. Jones also incorporated and operated Tom Sawyer Enterprises, Ltd. (TSE), a sales arm of CPC and owned 100% of the stock. The bank made several loans to CPC secured by liens on the inventory and accounts receivable of CPC and TSE. Jones

signed a personal guarantee on these loans which was in his capacity as owner of 78% of the stock of CPC and not individually. Jones attempted to get a long-term loan guaranteed by the Small Business Administration (SBA). Jones forwarded to the bank a completed SBA loan application together with a chattel mortgage on all of the candy manufacturing equipment of TSE. Jones contended that the chattel mortgage on the equipment of TSE was tendered to the bank only to be used in connection with obtaining long term financing and not as additional security for the original loans to CPC. Corporate plaintiff TSE and Jones as owner of 100% of the stock of TSE sued the bank in part for fraudulent misrepresentation and negligent handling of the lien papers. Our court held that the damages sustained from such misrepresentation were sustained by TSE and not by Jones individually, even though he owned 100% of the stock of TSE. All of the bank's dealings were with Jones in his capacity as president and 100% shareholder of TSE and not in his individual capacity. Accordingly, any wrong done by reason of the misrepresentation was done to TSE and not to Jones individually. The judgment in favor of Jones was reversed for lack of standing.

Here, in paragraph 3 of his amended petition, plaintiff alleges that "through said agreement," Kennametal represented to him that the claim would produce quantities of tungsten in excess of three thousand short ton units per month. In paragraph 12 plaintiff alleges that the agreement entered into by Kennametal with plaintiff misrepresented to plaintiff that Kennametal believed that tungsten could be profitably mined from the claim and based upon that misrepresentation made by Kennametal to plaintiff, he invested large sums of money into the development of the claim and in SERC.

Thus, the gist of plaintiff's petition is that Kennametal, by entering into a contract with SERC, fraudulently represented to plaintiff that the claim would produce certain amounts of tungsten. However, plaintiff fails to allege, nor can it be reasonably inferred, that any representation was made to him as an individual. Clearly, the contract is between SERC and Kennametal.

We have reviewed the contract, Exhibit B, and find no representation to plaintiff. Therefore, any alleged representation was made to the corporation and not to plaintiff.

It is our conclusion that plaintiff does not have standing to sue as an individual for an alleged fraudulent contractual representation to the corporation of which he is an officer and a stockholder. Since we conclude that plaintiff does not have standing to maintain this action, we need not address his point on stating a claim for relief.

■ In his second point, plaintiff alleges that Count III sets forth a claim for relief in fraudulent representation against ITL. ITL contends that plaintiff's amended petition fails to allege: 1) that ITL had any knowledge of the claim or that the claim would produce the quantities of tungsten, gold, and silver set forth in the test reports; 2) any misrepresentation by ITL; and, 3) that the test reports were inaccurate due to ITL's improper testing.

To survive a motion to dismiss, plaintiff's petition must state a claim for relief. Here, his amended petition must allege the elements of fraudulent representation. These are: a representation; its falsity; its materiality; the speaker's knowledge of its falsity, or his ignorance of its truth; the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; the hearer's ignorance of the falsity of the representation; the hearer's reliance on the representation being true; his right to rely thereon; and, the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443[1] (Mo. banc 1988).

In addressing ITL's first contention, that it did not have any knowledge of the claim and therefore could not have known the quantities of tungsten, gold, and silver the claim could produce, we note that plaintiff alleges in his amended petition in the following paragraphs:

2. That on or about April 1, 1985, Plaintiff was provided with a "Test Report" prepared by Defendant Industrial Testing Laboratories, Inc. containing information as to the relative amounts of tungsten present in the previously identified claim known as Rocky Mountain Minerals Claim Number One to Number Twenty-one. Said report is attached hereto, known as Exhibit "C", and incorporated herein by reference.

3. That on or about April 9, 1985, Plaintiff was provided with a second "Test Report" prepared by Defendant Industrial Testing Laboratories, Inc. containing information as to the relative amounts of gold and silver present in the previously identified claim. This report is attached hereto, known as Exhibit "D" and incorporated herein by reference.

7. That Defendant Industrial Testing Laboratories, Inc. knew, or with a reasonable degree of care and/or competence should have known, that said claim would not produce said quantities of tungsten, gold, and silver.

Treating these allegations as true, it can reasonably be inferred that ITL had knowledge of the claim and the quantities of tungsten, gold, and silver the claim could produce. Thus, the element of knowledge of the claim has been sufficiently pleaded.

Additionally, the test reports, Exhibits C and D, were prepared by ITL and addressed to plaintiff as an individual and, according to plaintiff's allegations, were based upon samples taken from the claim.

ITL also contends that plaintiff failed to allege any misrepresentation. Plaintiff alleges in paragraphs 4 and 5:

4. That said reports represented to Plaintiff that said claim would produce quantities of tungsten, gold, and silver as listed on said reports as a percentage.

5. That said claim, in fact, failed to produce such quantities.

Thus, treating these paragraphs as true and their reasonable inferences, the reports falsely represented the quantities of tungsten, gold, and silver the claims were capable of producing.

Finally, ITL contends plaintiff failed to allege that the test reports were inaccurate due to ITL's improper testing. Improper testing is not a necessary element of fraudulent representation and need not be alleged. The allegations in paragraphs 2, 3, 4, and 5 and their reasonable inferences indicate that the reports were inaccurate. The accuracy of the reports will be a matter of proof and may involve the testing procedures, but the allegation of representations coupled with ITL's knowledge is sufficient. Thus, we conclude that plaintiff has alleged the necessary elements of fraudulent representation in Count III and states a claim for relief.

Therefore, the judgment as to Count II is affirmed and the judgment as to Count III is reversed.

Judgment affirmed in part and reversed in part.

CRANDALL and GRIMM, JJ., concur.