Philip K. WENTHE, Plaintiff–Appellant,

v.

WILLIS CORROON CORP.,
et al., Defendants,

and

General Dynamics Corporation,
Defendant–Respondent.

No. 67644.

Missouri Court of Appeals,
Eastern District.

Feb. 13, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 25, 1996.

Case Transferred to Supreme Court
May 28, 1996.
Case Retransferred to Court of
Appeals Nov. 19, 1996.
Original Opinion Reinstated
Nov. 27, 1996.

Richard B. Blanke, Charles W. Bobinette, Uthoff, Graeber, Bobinette & O'Keefe, St. Louis, for appellant.

Stanley C. Schroeder, Patricia M. McFall, St. Louis, Douglas M. Greenwald, Kansas City, for respondent.

DOWD, Judge.

Philip K. Wenthe ("Wenthe") appeals from the trial court's dismissal of Counts IX, X, and XI of his first amended petition and from the trial court's order granting summary judgment in favor of General Dynamics on Count VII of his first amended petition by interlineation. We reverse in part and affirm in part.

Wenthe is an insurance broker. In the early 1980s, Wenthe developed a book of business for his previous employer that included insuring several lines of business for General Dynamics ranging from voyaging marine vessels to the launching of Atlas space rockets. On October 1, 1985, Willis Corroon,[1] an insurer, hired Wenthe as an insurance broker, and a written employment contract was executed. Simultaneously, Willis Corroon and Wenthe executed another written agreement that outlined the parameters of their newly formed relationship. The agreement provided Willis Corroon would finance Wenthe's purchase of the General Dynamics accounts from his previous employer in exchange for a share of the net commissions earned from the accounts and, importantly, an option to purchase the General Dynamics accounts from Wenthe.

Willis Corroon exercised its option in March of 1988 and agreed to pay Wenthe

---

1. Willis Corroon refers to four entities: Willis Corroon Corporation, Willis Corroon Corporation of Missouri (formerly known as Corroon and Black of Missouri), Willis Corroon Corporation of Maryland, and Willis Corroon Americas.

approximately 12.5% of the net commissions earned from the accounts through October 1, 1995. The employment agreement between Wenthe and Willis Corroon was amended several times, the last of which provided for his employment through October. 1, 1997.

Wenthe alleges in Count VII that in the fall of 1988 he entered into an oral contract with General Dynamics to provide insurance coverage for the launch of sixty Atlas rockets. Wenthe claims General Dynamics promised him its space insurance business, whether as an independent broker or as an employee of Willis Corroon. In exchange, Wenthe promised to service the General Dynamics accounts and not to offer such insurance packages to any competitors of General Dynamics.

Between 1988 and 1992, disputes arose between General Dynamics and Willis Corroon. On October 28, 1992, General Dynamics and Willis Corroon settled their disputes by executing a release agreement. Among other things, the agreement provided the following: "Willis Corroon is claiming commissions and premiums due on Third Party Space (Pre–Launch, Launch, and In–Orbit) Liability Insurance. Willis Corroon has submitted invoice #6589 in the amount of $3,680,000. As part of the settlement, Willis Corroon agrees to drop its claim for premiums and commissions in connection with such insurance. . . ." Between January and March of 1992, Wenthe was removed from servicing all of General Dynamics accounts at Willis Corroon. Wenthe eventually left Willis Corroon in the summer of 1993.

On March 16, 1994, Wenthe filed a petition against Willis Corroon and General Dynamics asserting several legal theories regarding his employment agreement and his purchase agreement with Willis Corroon and the actions of General Dynamics. Wenthe's first amended petition, as amended by interlineation, became the basis for this appeal. The counts dismissed by the trial court are as follows: Count VIII alleged General Dynam-

ics slandered Wenthe;[2] Count IX and X alleged General Dynamics tortiously interfered with Wenthe's contract and business expectancy in his annual compensation, and his past-earned and future-earned commissions for servicing General Dynamics' accounts with Willis Corroon; and Count XI alleged a civil conspiracy among the various Willis Corroon entities and General Dynamics based upon the wrongful actions asserted in Counts VIII through X. The trial court entered summary judgment in favor of General Dynamics on Count VII, which alleged General Dynamics breached an oral contract with Wenthe regarding the sixty Atlas space launches. The remaining counts against Willis Corroon are pending before the trial court.[3]

▇▇▇ In his first two points on appeal, Wenthe asserts the trial court erred in dismissing Counts IX, X, and XI of his first amended petition. In reviewing a trial court's order dismissing a claim, we accept all properly pleaded facts as true, we give the pleadings their broadest intendment, and we construe all allegations favorably to the pleader. *Davis v. Carmichael,* 755 S.W.2d 679, 680 (Mo.App.1988); *See Sofka v. Thal,* 662 S.W.2d 502, 506 (Mo. banc 1983). A petition is sufficient if it invokes substantial principles of law which entitle the plaintiff to relief and informs the defendant of what the plaintiff will attempt to establish at trial. *Fischer, Spuhl, Herzwurm & Associates, Inc. v. Forrest T. Jones & Company,* 586 S.W.2d 310, 316 (Mo. banc 1979). Furthermore, a pleader is only required to state the ultimate facts and it is not required to plead the facts or circumstances by which the ultimate facts will be established. *Scheibel v. Hillis,* 531 S.W.2d 285, 290 (Mo. banc 1976). Importantly for the case at bar, *Scheibel* went further and instructed that "Plaintiff could be compelled . . . by interrogatories to give more information . . . but this does not mean the petition does not state a cause of action[.]" *Id.* Because the trial court did not state its reasons for granting the motions

---

2. Wenthe concedes in his opening brief that Count VIII for slander was properly dismissed by the trial court on statute of limitations grounds.

3. Pursuant to Rule 74.01(b), the trial court found there was "no just reason for delay" regarding Counts VII through XI of Wenthe's first amended petition, and entered an appealable judgment in favor of General Dynamics.

to dismiss, we presume the dismissal was based upon one of the grounds presented, and we will affirm the dismissal if any of the points can sustain the trial court's action. *Berkowski v. St. Louis County Bd. of Election Commissioners,* 854 S.W.2d 819, 823 (Mo.App.1993).

General Dynamics asserts the dismissal of those counts should be upheld for two reasons: First, "To allege tortious interference based on slander, plaintiff must first state a claim for slander, which plaintiff has failed to do." Second, General Dynamics cannot interfere with its own contract; therefore, Wenthe has failed to plead absence of justification, an element of intentional interference with contract.[4] We disagree.

Before turning to the merits of General Dynamics arguments, we set out the dismissed allegations of Wenthe's first amended petition. As for the first element, Wenthe alleges the existence of multiple employment agreements, an overview agreement, and a purchase agreement that show a contract or valid business expectancy. For example, the parties signed two agreements on October 1, 1985. The first included a resolution that made clear Willis Corroon recruited and hired Wenthe because of his ownership of the valuable General Dynamics accounts. As a part of the first agreement, Willis Corroon lent $840,000 to Wenthe so that he could purchase the General Dynamics accounts from his previous employer. In exchange for the loan, among other things, Wenthe agreed to give Willis Corroon an option to purchase the accounts by January 1, 1988. If Willis

Corroon exercised its option, the first agreement further provided Willis Corroon "shall offer to Philip K. Wenthe an employment contract to commence effective with the exercise of said option which shall provide a compensation package in accordance with [Willis Corroon's] guidelines in effect at October 1, 1985." In fact, Willis Corroon exercised its option in 1987 and granted Wenthe an employment contract.

Given Wenthe's recruitment by Willis Corroon and his long-standing work with General Dynamics accounts, Willis Corroon's agreement to offer Wenthe an employment contract *after* it had purchased the General Dynamics accounts from him, clearly shows the expectations of the parties were to allow Wenthe to continue servicing those accounts in return for a salary based upon Willis Corroon's compensation guidelines. This is indeed what happened from 1987 until 1992, the time of the alleged interference by General Dynamics. Thus these contracts and the course of dealings between the parties constitute the basis for the business expectancy allegedly interfered with by General Dynamics.[5]

As for the second element, Wenthe alleges "Defendant General Dynamics Corporation knew of the existence of the Employment Agreement and the Purchase Agreement." As for the third element, Wenthe alleges General Dynamics intentionally interfered with his employment and purchase agreements, among other things, by:

1) making the false defamatory statements as set forth hereinabove;[6] 2) threatening

**4.** A claim for intentional interference with contract or business expectations includes the following elements:
 1) a contract or valid business relationship or expectancy;
 2) knowledge by the defendant of the contract or relationship;
 3) intentional interference by the defendant which induces the breach of contract or relationship;
 4) the absence of justification; and
 5) resulting damages.
*Buller v. Pulitzer Pub. Co.,* 684 S.W.2d 473, 479 (Mo.App.1984).

**5.** Although Wenthe had a series of written employment contracts that provided he could only be dismissed for cause, we note the overwhelm-

ing majority of caselaw holds even interference with employment contracts terminable at will are actionable. *Hester v. Barnett,* 723 S.W.2d 544, 564 (Mo.App.1987); W. Page Keeton et al., *Prosser and Keeton On The Law of Torts* § 129 at 995–96, n. 83 (5th ed.1984).

**6.** The defamatory statements alleged in Counts IX and X include the following: "That the plaintiff had engaged in illegal 'sweetheart deals' with former General Dynamics Corporation management with regard to the sale of insurance for the purpose of his own profit; and further, in conflict of interest, was a member of a syndicate where he placed General Dynamics insurance accounts, improperly and illegally benefitting therefrom ... That plaintiff was a 'crook' and was stealing money from his expense accounts

and refusing to pay the earned premiums, commissions and fees owed on its accounts with defendant Willis Corroon Corporation of Missouri, and unearned future premiums for non-cancelable policies, unless defendant Willis Corroon Corporation of Missouri refused to allow plaintiff to work on the General Dynamics Corporation accounts; and 3) threatening to remove all future business from all Willis Corroon entities unless defendant Willis Corroon Corporation of Missouri refused to allow plaintiff to work on the General Dynamics Corporation accounts.

As for the fourth element, Wenthe alleges:

Defendant General Dynamics Corporation intentionally interfered as alleged above, without justification or excuse, in that they were motivated by the improper motive to harm plaintiff and further used wrongful means, to-wit: defendant had no legal right to tortiously defame plaintiff in the manner alleged in Count VIII ...; and defendant General Dynamics Corporation wrongfully cajoled and threatened defendant Willis Corroon Corporation of Missouri that it would refuse to pay earned premiums, commissions and fees due, thereby threatening illegal actions and breaches of contract, unless defendant Willis Corroon Corporation of Missouri breached its contracts and relationship with plaintiff.

Plaintiff's First Amended Petition, p. 26–27.

As for the last element, Wenthe asserts, "General Dynamics Corporation's tortious interference with contract and business relationship directly damaged plaintiff, to-wit: deprived plaintiff of his compensation in accord with his Employment Agreement in the approximate amount of $527,103.00 and further deprived plaintiff of his commissions and fees in the approximate amount of $239,592.00, the amount due under the Purchase Agreement."

In *Buller*, this court reviewed a petition alleging tortious interference with business expectancies in which the plaintiff alleged "Defendants had no justification for such publication[.]" *Buller*, 684 S.W.2d at 480. The *Buller* court held the above allegation, in light of the command of *Scheibel*, sufficiently established that element of the tort. *Id.; Fischer*, 586 S.W.2d at 315–16.

After a careful review of the allegations forming Counts IX, X, and XI, we reach the same conclusion in this case. Wenthe's first amended petition sets forth allegations at least as, and in many instances, more specific than those in *Buller*. Therefore, we find Wenthe has sufficiently pled all of the elements of tortious interference in Counts IX and X of his first amended petition. Additionally, we find Count XI sufficiently pled a civil conspiracy because Wenthe alleged an agreement between Willis Corroon and General Dynamics to do an unlawful act, i.e. the allegations in Counts IX and X. *Ritterbusch v. Holt*, 789 S.W.2d 491, 494 (Mo. banc 1990).

 General Dynamics' first argument fails because it assumes a tortious interference claim that utilizes allegedly slanderous statements cannot stand unless the plaintiff concurrently states a claim for slander. General Dynamics has consistently argued Wenthe's "principal" claim was slander. Wenthe's slander claim was subsequently barred by the one-year statute of limitations for such claims. According to General Dynamics, Wenthe's tortious interference action is also time-barred by the one-year statute of limitations for defamation actions. In support of this argument, General Dynamics asserts the *only* jurisdictions to address this issue have ruled that "[w]here defamation claims are barred by the statute of limitations, *related* tortious interference claims are also barred." (Emphasis added). However, we do not find the cases cited by General Dynamics support this proposition. *See Martinez v. Hardy*, 864 S.W.2d 767, 776 (Tex.Ct.App.1993); *Evans v. Philadelphia Newspapers, Inc.*, 601 A.2d 330, 334–35 (Pa.Super.Ct.1991); *McGaa v. Glumack*, 441 N.W.2d 823, 826 (Minn.Ct.App.1989); *Lashlee v. Sumner*, 570 F.2d 107, 109 (6th Cir. 1978). Rather, we find the better reasoned

... That plaintiff was getting 'kickbacks' from London Underwriters on General Dynamics ac-

counts...."

analysis and the weight of authority holds that the "gravamen" of the complaint (*see Downey v. United Weatherproofing*, 253 S.W.2d 976, 982–83 (Mo.1953); *Joba Const. Co., Inc. v. Burns & Roe Inc.*, 121 Mich.App. 615, 329 N.W.2d 760 (1982)) or "a fair reading of the complaint in its totality," (*see McCully–Smith Associates, Inc. v. Armour & Co.*, 358 F.Supp. 331, 332 (W.D.Pa.1973)), should determine whether the cause of action is for defamation or tortious interference and then the applicable statute of limitations should be applied. *See also, Guaranty Nat. Ins. Co. v. International Ins. Co.*, 994 F.2d 1280, 1284 (7th Cir.1993); *Garrison v. Herbert J. Thomas Memorial Hospital*, 190 W.Va. 214, 438 S.E.2d 6, 12–15 (1993); *Wilkerson v. Carlo*, 101 Mich.App. 629, 300 N.W.2d 658, 660 [n. 3] (1980); *Joba Const. Co., Inc.*, 329 N.W.2d at 760; *Bio/Basics Intern. v. Ortho Pharmaceutical Corp.*, 545 F.Supp 1106, 1111–12 (S.D.N.Y.1982). Where the tortious interference is a mere label used to avoid the statute of limitations—on what is principally a claim for slander—the action should be judged by the shorter defamation statute of limitations and barred. *Bio/Basics Intern*, 545 F.Supp at 1109–10, n. 1. Here, however, a fair reading of the petition indicates the gist of Wenthe's allegations sought redress for the alleged tortious interference by General Dynamics, and was not an attempt to subvert the statute of limitations for a slander action. *See Garrison v. Herbert J. Thomas Memorial Hospital Association*, 438 S.E.2d at 14 ( [O]ne of the elements for tortious interference is an intentional act which "could consist of defamatory statements or writings. Yet, merely because one of the elements of tortious interference could require proof of defamatory statements or writings does not change the cause of action to defamation."); *Downey*, 253 S.W.2d at 983 ("[A]lthough the stated false representations are of a defamatory character, they are not alleged as such as the basis for injunctive relief. They are alleged as a means by which defendant was attempting to accomplish another continuing wrong from which plaintiffs seek relief ... We think it must be conceded that the gist or gravamen of plaintiffs' claim as alleged is for relief against the continuing violation of their property rights—their right to pursue their business and their right to reap the profits from existing contracts."). Thus General Dynamics' first argument is meritless.

We decline to reach the merits of General Dynamics second argument. Citing *Community Title v. Roosevelt Federal S & L*, 796 S.W.2d 369, 372–73 (Mo. banc 1990), General Dynamics argued its conduct was justified because one who has an economic interest in a contract cannot be held liable for inducing a breach of such contract unless improper means were used. It is inappropriate for us to consider General Dynamics' second argument on a motion to dismiss because it is an argument that General Dynamics is entitled to *judgment as a matter of law*—not that Wenthe failed to state a claim upon which relief could be granted. Here, Wenthe has sufficiently pled absence of justification by improper means (with the allegations of independently wrongful conduct including, among other things, the slanderous statements and the threats to not pay due premiums on several insurance contracts) which, as discussed above, satisfies Wenthe's burden under *Scheibel* and states a cause of action sufficient to survive a motion to dismiss.

■ In his third and last point on appeal, Wenthe argues the trial court erred in granting summary judgment for General Dynamics on the breach of contract count (Count VII) because the motion and response revealed genuine issues of material fact and General Dynamics was not entitled to judgment as a matter of law. We disagree.

■ We review the record in the light most favorable to the party against whom summary judgment was entered, which means the "movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). Our review is essentially *de novo*. *Delp v. Doe*, 895 S.W.2d 91, 92 (Mo.App.E.D. 1995).

Wenthe, in Count VII of his first amended petition, alleges on or about September 26, 1988, he and General Dynamics entered into an agreement whereby Wenthe promised and

agreed to "a) continue working certain 'space business' insurance accounts for General Dynamics which plaintiff initiated and established for the benefit of defendant General Dynamics"; and b) refrain from competing or conflicting in any way with General Dynamics' "space business" on his own behalf or for another company. General Dynamics allegedly agreed in exchange "to refrain from using the services of any insurance broker or agent other than plaintiff, through the auspices of Corroon & Black of Missouri, to insure or otherwise cover the risk of any of General Dynamics 'space business' lines as was [sic] at that time placed through Corroon & Black of Missouri by plaintiff, and for the duration of sixty (60) space shots." Wenthe alleges General Dynamics breached this 1988 agreement in 1992 by using insurance brokers other than Wenthe to work the "space business."

On October 28, 1992, General Dynamics and Willis Corroon executed an agreement that in paragraph ten settled and released all claims relating to General Dynamics' space business: "10. Willis Corroon is claiming commissions and premiums due on Third Party Space (Pre–Launch, Launch, and In–Orbit) Liability Insurance. Willis Corroon has submitted invoice # 6589 in the amount of $3,680,000. As part of the settlement, Willis Corroon agrees to drop its claim for premiums and commissions in connection with such insurance . . . ."

Wenthe argues the motion for summary judgment was improperly granted because 1) a person not a party to a release cannot be legally bound to it; and 2) the release was void as an illegal rebate of insurance premiums under § 375.936(9), RSMo 1994. We find both arguments unpersuasive.

Wenthe admits he was a continuous employee of Willis Corroon from October 1, 1985 through June 30, 1993. When Wenthe allegedly contracted for General Dynamics' space business in 1988, he was contractually obligated "to devote his full-time best efforts" to generating and placing insurance on behalf of Willis Corroon. Wenthe further admits, pursuant to the terms of his amended employment agreement with Willis Corroon, his primary job duties were to generate and

place insurance coverage on behalf of Willis Corroon for General Dynamics. In Wenthe's response to General Dynamics' motion for summary judgment, he admits "repeatedly demand[ing], *as an agent and employee of Willis Corroon*, that defendant pay its premiums and commissions due on the space insurance, *to Willis Corroon* . . . Again, however, the defendant's promise was made *directly to plaintiff*." (Emphasis added).

█ Notwithstanding Wenthe's assertion that General Dynamics made a promise "directly to plaintiff," the balance of Wenthe's admissions and statements clearly demonstrate he asserted the claims against General Dynamics not personally, but as an agent of Willis Corroon. General Dynamics and Willis Corroon entered into an agreement that settled and released all claims regarding General Dynamics' "space business." A validly executed release is *prima facie* evidence that the movant is entitled to judgment as a matter of law. *See Andes v. Albano,* 853 S.W.2d 936, 940 (Mo. banc 1993). Therefore, the trial court properly entered summary judgment on Wenthe's contract claim because his response did not rebut the presumption raised in favor of General Dynamics—it actually confirmed that he asserted the claims against General Dynamics as an agent of Willis Corroon.

█ Wenthe's last argument attacking the summary judgment is that the release provides for an illegal rebate of insurance premiums under § 375.930(2), RSMo 1994. We find the argument unavailing because the statute does not allow a private cause of action for alleged violations. *See Liberty Life Ins. Co. v. Schaffer,* 853 F.2d 591, 593 (8th Cir.1988) (the Missouri Director of Insurance has statutory responsibility for determining whether an insurance company has violated the statute; the statute does not provide a private right of action) (citing *Tufts v. Madesco Inv. Corp.,* 524 F.Supp. 484, 486–87 (E.D.Mo.1981)). Point denied.

The judgment granting General Dynamics' motions to dismiss Counts IX, X, and XI of Wenthe's first amended petition is reversed, and the summary judgment on Count VII is affirmed.

CRAHAN, P.J., concurs in part; dissents in part.

CRANDALL, J., concurs.

CRAHAN, Presiding Judge, concurring in part and dissenting in part.

I concur in the majority opinion insofar as it affirms the summary judgment in favor of General Dynamics on Count VII, breach of contract. I respectfully dissent from the majority's determination that plaintiff's petition is sufficient to state a claim for relief on Counts IX and X, tortious interference with contract,[1] and Count XI, civil conspiracy. Even giving plaintiff the benefit of all reasonable inferences, the petition does not adequately plead a contract or valid business relationship or expectancy that was or could have been interfered with by General Dynamics. Nor does it sufficiently plead absence of justification, causation, or conspiracy to commit an unlawful act.

In order to state a claim for interference with contract or valid business expectancy, it is first necessary to establish what contractual right or valid business expectancy the plaintiff had. If the pleadings establish that the alleged contractual right does not exist or that any expectancy was not reasonable and valid under the circumstances alleged, it follows that there was nothing for the defendant to interfere with.

According to the majority, the alleged breach of contract or valid business expectancy in this case was Willis Corroon's removal of plaintiff as its servicing agent for General Dynamics' insurance accounts with Willis Corroon—accounts plaintiff sold to Willis Corroon pursuant to a written purchase agreement in March, 1988. See slip op. at p. 792–793. The entire series of written contracts of employment, option for purchase and the purchase agreement itself are attached to the petition and incorporated therein by reference. Inasmuch as the meaning of these contracts is purely a question of law, it is appropriate to examine them to determine whether these agreements or any other circumstances alleged in the petition give rise to any contractual right or valid

business expectancy on plaintiff's part that he would serve as Willis Corroon's exclusive agent for the General Dynamics accounts, or at least could not be removed from such accounts. We are necessarily handicapped in this regard by the fact that nowhere in the petition does plaintiff specifically allege that he had any contractual right or valid business expectancy that he could not be removed from the General Dynamics accounts, let alone the source of such right or expectancy. Leaving that deficiency aside, however, the more fundamental problem from plaintiff's perspective is that the contracts themselves and the circumstances alleged by plaintiff squarely refute plaintiff's assertion of such a right or expectancy.

Attached to the petition and incorporated therein are four basic agreements and amendments thereto: (1) an option agreement dated October 1, 1985; (2) an employment agreement dated October 1, 1985; (3) an employment agreement dated October 1, 1987; and (4) an agreement for purchase of certain General Dynamics accounts from plaintiff dated March 15, 1988. I can find nothing in any of these agreements which purports to grant plaintiff an exclusive right to act as Willis Corroon's agent on the General Dynamics accounts or that would in any way preclude Willis Corroon from reassigning him to work on other clients if it deemed such action to be appropriate. Nor can I find any allegation in the petition that the contracts themselves contained such terms.

The majority likewise does not identify any contract provisions or allegations thereof that would prevent Willis Corroon from assigning someone else to service the General Dynamics accounts. Rather, the majority holds that plaintiff's recruitment by Willis Corroon, his long-standing work with General Dynamics, his employment by Willis Corroon after it purchased the General Dynamics accounts from him and his assignment to work on those accounts up to the date of General Dynamics' alleged interference gave rise to a business expectancy that plaintiff would continue working on the General Dynamics ac-

---

1. As discussed in greater detail *infra,* Count IX seeks damages for depriving plaintiff of past

commissions earned and Count X seeks damages for depriving plaintiff of future compensation.

counts and earn continuing compensation therefor. See slip op. at p. 793. Assuming that such an expectancy can be fairly inferred from the petition, I cannot agree that this is a *reasonable* business expectancy that is susceptible of interference by General Dynamics.

The situation presented can be better understood by substituting functional titles for the names of the parties. The petition essentially alleges that Agent (plaintiff), while working for a previous employer, sells various lines of insurance to Customer (General Dynamics) which results in the establishment of valuable continuing accounts for the placement and renewal of insurance. Agent obtains a loan from New Employer (Willis Corroon) and purchases the accounts for himself. Agent accepts part-time employment with New Employer, contracts with New Employer to service the accounts he now owns in exchange for a share of the commissions, and grants New Employer an option to purchase the accounts from him. New Employer later purchases the accounts of Customer and hires Agent on a full-time basis. Agent is assigned to work on Customer's accounts. Customer becomes dissatisfied with Agent and demands Agent to be removed from servicing its accounts or it will take its business elsewhere. Customer allegedly slanders Agent, calling him a "crook" among other things. New Employer complies with the demand and reassigns Customer's accounts to another subsidiary. The issue is whether Agent has stated a claim against Customer for tortious interference with Agent's reasonable business expectancy of continuing to service Customer's accounts and earn commissions therefor.

If the defendant in this case was a third party, such as a competitor for General Dynamics' insurance business, the answer would be yes. Given the long-standing nature of the relationship, there is a reasonable expectation that the relationship will continue absent interference by a third party. If the third party uses wrongful means, such as slander, to interfere with that expectancy, the interference is actionable. Where the defendant is the customer, however, there can be no reasonable expectancy that the relationship will continue, nor can the customer interfere with such expectancy. This is because an insurance customer has an absolute right to determine who it will deal with in placing insurance coverage. *See Fred Miller Co. v. Empire Fire & Marine Ins. Co.,* 503 F.2d 751, 754 (8th Cir.1974). Because the customer has an unfettered right to place its insurance business with whomever it pleases, whenever it pleases, there can be no reasonable business expectancy, viz-a-viz the customer, that the relationship will continue. Nor can the customer interfere with a contract, understanding or expectancy between two third parties (here, plaintiff and his employer) to sell insurance to itself. Whatever plaintiff and his employer may have agreed upon concerning the servicing of General Dynamics accounts, it cannot constitute a *reasonable* business expectancy General Dynamics was in any way obligated to respect. Plaintiff's alleged expectancy of further business was reasonable only if and so long as General Dynamics consented to the arrangement. Thus, by revoking its consent to plaintiff's continued servicing of its accounts, General Dynamics cannot tortiously interfere with plaintiff's expectancy regardless of its justification and regardless of whether its conduct was otherwise wrongful.

The petition is further deficient for failure to allege any rational linkage between the alleged interference and the alleged wrongful acts negating justification, or between the alleged interference and wrongful acts and resulting damage. Count IX, for example, alleges damage in the form of Willis Corroon's failure to pay earned commissions for work plaintiff performed prior to his removal from the accounts. There is no allegation, however, that General Dynamics took any action or made any request that would prevent plaintiff being paid for work he had already performed. Indeed, plaintiff alleges that General Dynamics paid Willis Corroon for the work, so it is difficult to understand how its demand that plaintiff be removed

from *future* work on its accounts, which is not in any event tortious interference, could constitute tortious interference with his contractual right to payment for work already performed and paid for by General Dynamics.[2]

Count X alleges plaintiff was deprived of future commissions by reason of Willis Corroon's transfer of two specified General Dynamics accounts to other Willis Corroon entities. As discussed above, as a matter of law plaintiff cannot have a reasonable business expectancy viz-a-viz General Dynamics that he will continue to service its accounts. This is not simply a matter of failure to allege absence of justification on the part of General Dynamics, it is a failure to allege a reasonable business expectancy that General Dynamics could have interfered with in the first place. Further, in his petition, plaintiff alleges that under the terms of his contracts with Willis Corroon, he is entitled to commissions on amounts received on the General Dynamics accounts regardless of who services them. The purchase agreement at least appears to support this contention. If plaintiff is entitled to be paid commissions on the General Dynamics accounts in any event, his removal from the accounts does not result in any damage.

I have no quarrel with the majority's determination that, in a proper case, the fact that an action for slander may be barred by the applicable statute of limitation should not prevent proof of slander as a wrongful act comprising an element of tortious interference. For the foregoing reasons, however, I do not believe that this is such a case. The petition never alleges a reasonable business expectancy that could have been interfered with by General Dynamics. Further, the petition is insufficient to establish any linkage or causation between the slander and any alleged interference by General Dynamics. One cannot utter slander to oneself, so the alleged slander by General Dynamics

cannot be the cause of General Dynamics' demand that plaintiff be removed from its own accounts. In addition, a number of the alleged incidents of slander involved statements to persons with no apparent ability to influence plaintiff's employment in any fashion. All of the alleged slander is simply lumped together through a general incorporation by reference of the slander count and alleged generally to be a wrongful act constituting interference. The Missouri Supreme Court has recently rejected the sufficiency of this sort of allegation in a tortious interference case. *See Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316–17 (Mo. banc 1993).

Finally, the majority upholds the sufficiency of plaintiff's "civil conspiracy" count. Inasmuch as this count simply rehashes the allegations of Counts IX and X, it adds nothing to the petition. The count is also insufficient on its face as it merely incorporates allegations by reference without any indication of which of the earlier alleged facts establish which elements of the alleged conspiracy. After a careful reading of the petition, I am unable to discern the elements and do not see how General Dynamics can prepare itself to meet them. I perceive no error in the trial court's dismissal of this count. *See id.* at 317.

For the foregoing reasons, I would affirm the judgment of the trial court in dismissing Counts IX, X and XI.

---

**2.** Plaintiff arguably could have claimed that General Dynamics' alleged slander caused his employer not to pay him, but that would simply be part of his consequential damages for slander, not conduct which would itself constitute interference with his contract with his employer. As noted in the majority opinion, plaintiff does not contest the dismissal of his slander claims.