**MAR–FARR CORPORATION, an Illinois corporation, d/b/a Volz News Agency, Plaintiff,**

v.

**The COPLEY PRESS, INC., an Illinois corporation, et al., Defendants.**

**No. 74 C 1250.**

United States District Court, N. D. Illinois.

Sept. 11, 1974.

Hubachek, Kelly, Rauch & Kirby, Chicago, Ill., for plaintiff.

---

Lambert M. Ochsenschlager, Aurora, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes before the Court on defendants' motion to dismiss on the grounds of lack of jurisdiction over the subject matter pursuant to Rule 12(b). Plaintiff initiated this action by invoking the jurisdiction of this Court under 15 U.S.C. §§ 15 and 26 and under 28 U.S.C. § 1337 which grant district courts original jurisdiction of civil actions arising under any Act of Congress regulating trade and commerce including antitrust actions.

Plaintiff, in its complaint, alleges, *inter alia,* violation of Sherman Act §§ 1 and 2, 15 U.S.C. §§ 1 and 2, and seeks treble damages in accordance with § 4 of the Clayton Act, 15 U.S.C. § 15.

Plaintiff is an Illinois corporation doing business as Volz News Agency. The Agency has been distributing for 77 years in Lockport, Illinois, and environs, the Herald-News which is published by the defendant, Copley Press, Inc. The main thrust of the complaint is that the defendant has fixed the price at which newspapers published by it may be resold to subscribers. Consequently, the plaintiff distributor was unable to continue serving home delivery customers and was forced to surrender the home delivery, or some part thereof, to the defendant Copley Press, Inc., which then took over the home delivery and maintained it at a fixed price.

The net result of this conduct, plaintiff contends, is an attempt to monopolize the sale and to fix the price for distribution of the newspaper resulting in a take-over of plaintiff's distribution business by alleged means of unfair competition.

By virtue of the motion to dismiss for lack of jurisdiction one central issue is presented to the Court: Do the acts alleged sufficiently affect interstate commerce so as to give this Court jurisdiction?

In its complaint and brief in opposition of the motion to dismiss plaintiff enumerates various factors touching upon interstate commerce. Specifically: that the Joliet Herald-News is circulated throughout other parts of the United States; it utilizes paper, inks and other materials shipped inter-state in production of the paper; it is affiliated with other companies in the Copley Press Group publishing throughout the United States; it disseminates news via the use of three national and international wire services supplied from outside of Illinois; and, it utilizes a national advertising agency in addition to local advertisers to advertise products which move in interstate commerce.

Defendant responds that this dispute involves a local product in a local market. The local product is the home delivery of the newspaper in Lockport, Illinois. Further, that no direct or substantial damage to the newspaper or advertising market or to the ultimate reader-consumer has been charged nor could be inferred.

The Court agrees with defendant that interstate commerce must be more than obliquely or incidentally affected. See Michigan Bar Review Centers, Inc. v. Nexus Corp., 5 Trade Reg. Rep. 73,891 (N.D.Ill.1972). However, the instant case presents a factual situation where the exact effect on interstate commerce is unknown. Thus, at this time a motion to dismiss for lack of jurisdiction would be improper.

The question of applicability of federal antitrust acts as they apply to publishers of newspapers was discussed in Lorain Journal company v. United States of America, 342 U.S. 143, 72 S. Ct. 181, 96 L.Ed. 162, (1951) wherein the Supreme Court stated:

"The distribution within Lorain of the news and advertisements transmitted to Lorain in interstate commerce for

the sole purpose of immediate and profitable reproduction and distribution to the reading public is an inseparable part of the flow of the interstate commerce involved [citations omitted]. Unless protected by law, the consuming public is at the mercy of restraints and monopolizations of interstate commerce at whatever points they occur. Without the protection of competition at the outlets of the flow of interstate commerce, the protection of its earlier stages is of little worth," 72 S.Ct. 185–186.

Of course the *Lorain* decision was based on facts much different than are presented in this case. In *Lorain* the publisher refused to accept advertisements from any advertiser who did business with a competitor radio station thus giving the publisher a virtual monopoly over the news and advertising presented to the residents of Lorain County. In the present case it is unclear (even assuming that the allegations in plaintiff's complaint are true) what the effect will be on customers of the Joliet-Herald News.

The inadvisability of dismissing a case where the effect upon interstate commerce could be more fully developed at trial is well illustrated by the decision in Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732, 747 (9th Cir.), cert. denied 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954):

"Whether a purely local or intrastate conspiracy unreasonably restrains interstate commerce is primarily a factual question, i. e. does the local price fixing conspiracy affect substantially the flow of interstate commerce? If the answer is yes, then only are we concerned with the effect of the price-fixing under the per se doctrine. In fact, unless there is a finding that the local and intrastate activities complained of and as alleged in the indictment, substantially affect interstate commerce, there is no jurisdiction in a

district court over the alleged Sherman Act violation."

It may be argued by defendants that circulation of the Herald-News continues in Lockport, so there is no impact on this flow of interstate commerce. It is true that as to some home delivery subscribers another distribution method has already taken the place of plaintiff's. This substitution of distribution methods may or may not have violated federal laws. The Court does not express any opinion on that issue at this time. Yet, even though the substitution of distribution methods and alleged price fixing may appear to be purely local in character they may have substantial effect upon interstate commerce. See United States v. Employing Plasterers' Assoc. of Chicago, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954).

A review of the leading antitrust cases in the newspaper field involving problems between publishers and distributors demonstrates that often the contested issues affect interstate commerce substantially. In Albrecht v. Herald Company, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968) the defendant newspaper hired another company to distribute its newspapers. This company solicited customers on plaintiff's route with the encouragement of the defendant. The defendant hired the new distributor company because the plaintiff was charging more than the maximum retail price advertised by the newspaper. Although the Supreme Court did not address itself specifically to the question of jurisdiction it did rule in plaintiff's favor finding an illegal restraint of trade under the Sherman Act.

In Evening News Publishing Co. v. Allied Newspaper Carriers, 263 F.2d 715 (3rd Cir. 1959) a refusal by delivery dealers to handle any of plaintiff's newspapers unless plaintiff ceased using newsboys for home delivery was held to be a restraint of trade affecting interstate commerce; the Court found that it

interfered with the interstate business of news and commercial advertising dissemination. Just recently in Bowen v. New York News, 366 F.Supp. 651 (S.D. N.Y.1973), an action brought by independent home delivery dealers of two newspapers against the publisher of those newspapers resulted in a judgment for plaintiffs. The Court found that the publisher and its franchise dealers were both wholesalers within the meaning of the McGuire Act and were not free to enter into price fixing agreements affecting interstate commerce as that term is used in the Sherman Act.

None of these cases is squarely on point with the fact situation now before the Court. Nor was the question of jurisdiction seriously questioned in the cases cited. Yet the cases indicate that interstate commerce is often seriously affected by the dealings between a newspaper publisher and its distributor.

 In support of its motion to dismiss defendant places great reliance on the decision in Page v. Work, 290 F.2d 323 (9th Cir. 1961) wherein the Court affirmed the dismissal of an antitrust complaint for lack of federal jurisdiction. The defendants were owners and publishers of 105 community newspapers in Los Angeles County, California. Each paper primarily carried news, classified and display advertising. They were members of a bureau which distributed legal advertising among themselves. The plaintiff was also a local newspaper, but not a member of the bureau and, thus, was deprived of access to the legal advertising. The plaintiff, claiming loss of revenue, sued the defendants for price fixing and attempted monopolization of public and private legal advertising. At the outset the Court found that all parties were engaged in interstate commerce. But that fact did not determine the issue, for as the Court held:

> "The test of jurisdiction is not that the acts complained of affect a business engaged in interstate commerce,

but that the conduct complained of affects the interstate commerce of such business." (290 F.2d at 330).

The defendant argues that the instant case falls within the rationale of the *Page* decision. It argues that plaintiff Mar-Farr sells papers solely within the State of Illinois and, that the relevant product is a physical object assembled, delivered and sold within the State of Illinois. Although it may be true that plaintiff has nothing to say about the contents of the newspaper; and, in fact, its only concern is with delivery to local residents, there still remains the question of whether or not this conduct, even if purely local, substantially affects interstate commerce. Consequently, dismissal of plaintiff's cause of action at this time would be improvident.

Defendants' motion to dismiss for lack of subject matter jurisdiction is hereby denied.