**C. BENNETT BUILDING SUPPLIES, INC., Plaintiff–Appellant,**

v.

**JENN AIR CORPORATION, Roth Distributing Co., Inc. and Andrew Wick, Defendants–Respondents.**

Nos. 54406, 54840.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 1, 1988.

---

Donald S. Hilleary, Clayton, for plaintiff-appellant.

Steven Paul Sanders, St. Louis, for Jenn Air Corp.

Brian Paul Seltzer, Barbara Multack Sacks, St. Louis, for Roth Dist. Co. Inc. and Andrew Wick.

SIMEONE, Senior Judge.

This is an appeal by plaintiff, C. Bennett Building Supplies, Inc., from an order and judgment of the circuit court of St. Louis County entered on January 4, 1988[1] dismissing Count III of plaintiff's petition

1. Rule 74.01(b). Plaintiff's First Amended Petition for damages filed November 17, 1986 was

seeking treble damages against defendants-respondents, Jenn Air Corporation, Roth Distributing Co, Inc. and Andrew Wick, under the Missouri Antitrust Law, §§ 416.011–416.161, R.S.Mo.1986. We reverse and remand for further proceedings.

## I.

The First Amended Petition, filed on December 27, 1984, as amended by interlineation on April 29, 1987, alleged that plaintiff, C. Bennett Building Supplies, Inc. (Bennett), was engaged in the business of selling Jenn Air Kitchen Equipment products manufactured by the defendant, Jenn Air Corporation (Jenn Air). These products were sold by Bennett to residential builders and other customers in St. Louis, St. Louis County and the surrounding areas of Missouri and Illinois. Roth Distributing Co., Inc. (Roth) was a distributor of Jenn Air products in that trade area. Andrew Wick (Wick) was the agent, employee and general manager of Roth Distributing Co. and acted within the scope and course of his employment.

The petition further alleged that in 1981 and 1982, plaintiff and defendant-Roth were involved in a "program" under which plaintiff was a "volume-builder distributor" of Roth's "selling Jenn Air Products" to home builders in the trade area, and that during that "program," Bennett purchased the Jenn Air Products from Roth for resale to its customers. In 1982, a "dispute" arose between Bennett and Roth, and Roth refused to sell Bennett any Jenn Air products "intending during this time" to "steal these customers from the plaintiff." The

petition further alleged that, after the dispute arose, Roth refused to sell any Jenn Air products to Bennett for resale, but Bennett obtained another distributor located in Little Rock, Arkansas, and continued to sell such products to its customers. After Bennett began purchasing from the Little Rock distributor, it had a "valid business expectancy" to sell such products to its customers.

Bennett alleged that Jenn Air and Roth "conspired" and "agreed" that they "would drive" plaintiff "out of the business" of selling Jenn Air Products and "allow" Roth to take over the business by forcing Bennett's "source" in Little Rock to refuse to continue to sell the products to Bennett. In order to implement this "conspiracy," Jenn Air threatened the Little Rock distributor with the loss of its franchise. The threat was successful, and the Little Rock distributor refused to sell Jenn Air products to plaintiff. Bennett then attempted to obtain the products from other distributors but was refused, and, as a result, was "forced out" of the business of selling such products.

Bennett further alleged that Roth called on all of its former customers in the trade area and obtained substantially all of its business for itself, so that in so doing, Roth and Jenn Air have successfully carried out the conspiracy to interfere with Bennett's business expectancy. Bennett alleged *inter alia* that threats, coercion, and intimidation were used by the defendants against the Little Rock distributor to force it to stop selling products to plaintiff and that such threats were in violation of Missouri antitrust laws. By interlineation, the

amended by interlineation on April 29, 1987. The petition was in three counts—Count I, conspiracy; Count II, tortious interference with business expectancy and Count III, violation of the Missouri Antitrust Law, ch. 416, R.S.Mo. 1986. The defendants, Jenn Air, Roth Distributing Co., and Wick, filed motions to dismiss Counts I, II, and III, and the trial court sustained the motions as to Count III, but overruled the motions as to Counts I and II. Thereafter plaintiff voluntarily dismissed Counts I and II and the trial court in its "memorandum and order" of January 4, 1988, entered a final judgment on Count III for purposes of appeal.

The original petition was filed on December 27, 1984.

After certain motions to dismiss the appeal were filed in this court, and were originally taken with the case, this court, on its own motion, on June 2, 1988, set aside the orders taking the motions to dismiss the appeal with the case, denied the respondents motions to dismiss the appeal, and granted appellant leave to file a late notice of appeal. Rule 81.07. The order dismissing Count III is, under the facts, an appealable order.

amended petition alleged that (1) the Little Rock distributor had a place of business in Springfield, Missouri and that all purchases of Jenn Air products by Bennett from that distributor were made from the office of the distributor in Springfield, and (2) that Roth had an office in St. Louis County; that Wick's "work place" was in St. Louis County and that all of the products were purchased from Roth in St. Louis County.

Based on these allegations, Bennett alleged that the conduct of Jenn Air, Roth and Wick violated the Missouri Antitrust Laws, ch. 416.011–416.161, R.S.Mo.1986, entitling it to treble damages. Bennett prayed for treble damages in the amount of $1,800,000.

Subsequently, Roth and Wick moved the court to dismiss the antitrust count because the claim "on its face, fails to state a claim under 'Missouri Antitrust Law' for the reason that the conduct ... even if true, took place in interstate commerce and is cognizable, if at all under the Federal Antitrust Law." On April 29, 1987, the court sustained Roth and Wick's motions to dismiss the antitrust count.

Jenn Air also filed a motion to dismiss. That motion also urged the court to dismiss the antitrust claim because the claim, on its face, fails to state a claim under Missouri antitrust law, for the reason that the conduct "took place in interstate commerce and is cognizable, if at all, only under the federal antitrust law *which preempts state law.*" On June 8, 1987, the trial court also sustained Jenn Air's motion to dismiss the antitrust claim. The trial court's memorandum and order stated that the court sustained the motion to dismiss the antitrust claim "for lack of subject matter jurisdiction as alleged in Motion To Dismiss ... (cognizable only under Federal Anti–Trust Law)."

Bennett appealed the dismissals of the antitrust claim.

## II.

On appeal, Bennett's sole point is that the trial court erred in dismissing the antitrust violation claims because Missouri's antitrust law, ch. 416.011, *et seq.* has not been "preempted" by federal legislation. Appellant frames the sole issue on appeal as whether the antitrust claim is cognizable "only under the federal antitrust law which *preempts* state law?" On the other hand, respondents, Jenn Air, Roth and Wick frame the issue on appeal, not in terms of preemption, but rather in terms of interstate commerce. They contend that since it is alleged in the petition that the respondents' conduct took place in interstate commerce, rather than in intrastate commerce, the state antitrust law is not applicable. The appellant's remedy, if any, is under the federal antitrust laws. 15 U.S.C.A. § 1 *et seq.* They argue that federal antitrust law is applicable to interstate commerce and the federal court has exclusive jurisdiction in such case, while the state antitrust laws are applicable solely to intrastate commerce. Since the appellant's petition shows on its face that interstate commerce is involved, and appellant sought to obtain products from another distributor in Arkansas, despite plaintiff's belated amendment by interlineation indicating the Arkansas distributor had an office in Springfield, Missouri, the court did not err in dismissing the petition. The gist of respondents' argument is that (1) if interstate commerce is alleged, or if intrastate commerce affects interstate commerce, the state court lacks subject matter jurisdiction and appellant's exclusive remedy, if any, is under federal law in the federal system, and (2) Missouri's state antitrust law is applicable only to intrastate commerce. They contend that appellant's reference to preemption is misplaced since the Missouri antitrust law is not preempted; it is "simply not applicable."

As we perceive it, the issues to be resolved in this proceeding are: (1) whether Missouri courts lack subject matter jurisdiction when the plaintiff's petition, relying on Missouri's antitrust law can be construed to allege that it has engaged in interstate commerce, or has engaged in intrastate commerce which affects inter-

state commerce, and (2) whether the Sherman Act preempts Missouri's Antitrust Law. For the following reasons we conclude that under the facts and circumstances presented, Missouri courts do not lack subject matter jurisdiction and that the Sherman Act does not preempt Missouri's antitrust law.

### III.

■ The resolution of the issues presented in this proceeding are far from definitively settled. The issues involve the Supremacy Clause of the United States Constitution, Art VI, cl. 2, the preemption doctrine and interstate commerce. The whole problem of state and federal economic controls has been termed an antitrust "maze." Judicial decisions and commentators have discussed these broad issues. *See* Conant, *The Supremacy Clause and State Economic Controls: The Antitrust Maze*, 10 Hastings Const.L.Q. 255 (1983); Note, *Preemption of Anti-competitive State Statutes By Section 1 of the Sherman Act: Is an Agreement Required*, 54 Fordham L.Rev. 247 (1985); Hovenkamp, *State Antitrust in the Federal Scheme*, 58 Ind.L.J. 375 (1983); Werden & Balmer, *Conflicts Between State Law and The Sherman Act*, 44 U.Pitt.L.Rev. 1 (1982); Posner, *The Proper Relationship Between State Regulation and The Federal Antitrust Laws*, 49 N.Y.Univ.L.Rev. 693 (1974); Comment, *State Action and The Sherman Antitrust Act*, 14 Conn.L.Rev. 135 (1981).

We first examine the preemption issue. Professor Hovenkamp indicates that before 1890 when the first federal antitrust statute was enacted, 15 U.S.C.A. § 1, *et seq.*, restraints of trade were regulated largely by state law. *See also*, Limbaugh, *Historic Origins of Anti–Trust Legislation*, 18 Mo.L.Rev. 215 (1953). The Sherman Act and its legislative history clearly indicate that Congress intended to leave state antitrust laws intact but to provide an additional federal forum for dealing with restraints of trade.[2]

The application of the Supremacy Clause and the doctrine of preemption was reviewed recently in *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978). *See also*, J. Nowak, R. Rotunda, J. Young, *Constitutional Law*, ch. 10 at 292 *et seq.* (2nd ed. 1983); *Brown v. Hotel & Restaurant Employees and Bartenders Int. Union*, 468 U.S. 491, 500, 104 S.Ct. 3179, 3185, 82 L.Ed.2d 373 (1984); *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 857 (Mo.App.1985); *Cipollone v. Liggett Group, Inc.*, 593 F.Supp. 1146, 1150 (D.N.J.1984)—scholarly discussion.

In determining whether a federal statute precludes similar state legislation, the Court, in *Atlantic Richfield, supra,* noted that federal statutes are exclusive if (1) the regulation is so pervasive that the reasonable inference is that Congress left no room for the states to supplement it, (2) the national interest is so dominant that the federal system will preclude enforcement of state laws on the same subject, or (3) the object of the federal statute or the character of obligations imposed by it may direct exclusivity. 435 U.S. at 157–158, 98 S.Ct. at 994–995. The Court also stated:

> Even if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it *actually conflicts* with a valid federal statute. A conflict will be found 'where compliance with both federal and state regulations is a physical impossibility' ... or where the state 'law stands as

---

**2.** The legislative history of the Sherman Act is replete with statements that the Act was designed to supplement rather than to preempt state law. Senator Sherman so argued. 21 Con.Rec. 2456–57 (1890) quoted in *Hovenkamp, supra,* 58 Ind.L.J. at 379.

It has been recognized that in addition to federal statutes state antitrust laws have played a part in antitrust enforcement. The majority of the states have passed legislation which generally tracks the Sherman Act. Considerable litigation exists, it is said, under some of these laws—notably the Donnelly Act in New York, N.Y.Gen.Bus.Law § 340 (McKinney 1968 Supp.) and the Cartwright Act in California, Cal.Bus. & Prof.Code § 16700–16760 (West 1983). *See* P. Jones, *Litigating Private Antitrust Actions,* § 10.2 at 5 (1984).

an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'

*Atlantic Richfield,* 98 S.Ct. at 994.

In *Rice v. Norman Williams Co.,* 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982), in dealing with preemption by the Sherman Act, the Supreme Court of the United States held that a state importer designation statute is not invalid as being preempted by that Act. The Court stated:

> In determining whether the Sherman Act pre-empts a state statute, we apply principles similar to those which we employ in considering whether any state statute is pre-empted by a federal statute pursuant to the Supremacy Clause. As in the typical pre-emption case, the inquiry is whether there exists an irreconcilable conflict between the federal and state regulatory schemes.... A state statue is not preempted by the federal antitrust laws simply because the state scheme might have an anticompetitive effect.

*Rice, supra,* 102 S.Ct. at 3299.[3]

In *State v. Lawn King, Inc.,* 84 N.J. 179, 417 A.2d 1025 (1980)[4] the Supreme Court of New Jersey had occasion to determine whether the New Jersey state antitrust act was preempted under the commerce clause by federal antitrust enactments. The New Jersey Court noted that many states have enacted laws designed to regulate unlawful restraints and business practices and that such state statutes have not been found to have been displaced by federal law. In fact, the court held that "consonance" between the federal and state enactments is required. The various courts which have addressed state antitrust acts patterned after the Sherman Act have concluded that

federal court interpretations of federal law constitute persuasive authority as to the meaning of the particular state enactments, but the state enactments have not been preempted by federal law. *See Lawn King, supra,* 417 A.2d at 1032 citing cases; § 416.141, R.S.Mo.1986; *Glasofer Motors v. Osterlund, Inc.,* 180 N.J.Super. 6, 433 A.2d 780, 788 (1981); *Cf., Fischer, Etc. v. Forrest T. Jones & Co.,* 586 S.W.2d 310, 313 (Mo. banc 1979). The trial court in its opinion in *Lawn King, supra,* 375 A.2d 295, stated that "although the Sherman Act was enacted 87 years ago, no state antitrust statute has ever been declared unconstitutional for being in conflict with it." 375 A.2d at 301. *See also,* Am.Jur.2d, *Monopolies,* § 461 (1971) and 1988 Supp.

Missouri has had an antitrust law since 1889. Mo.Laws 1889 at § 1–3, R.S.Mo. 1889, §§ 7319–7326; *see* history in Almstedt & Tyler, *State Antitrust Laws: New Directions in Missouri,* 39 Mo.L.Rev. 489 (1974). During the 1970's several states including Missouri began to revise and update their antitrust laws to make them more enforceable. *See* Ashcroft, *A Renewed Commitment To State Antitrust Enforcement,* 46 Mo.L.Rev. 469, 472 (1981). These state statutes, including the antitrust law of Missouri, are effective tools to achieve free enterprise.

In Missouri, numerous decisions have upheld the constitutionality of the state antitrust law. *First National Bank v. Missouri Glass Co.,* 243 Mo. 409, 147 S.W. 1030 (1912); *Finck v. Schneider Granite Co.,* 187 Mo. 244, 86 S.W. 213 (1905); *see* Bond, *The Antitrust Laws of Missouri,* 27 J. of Mo. Bar 61, 62 (1971).

The Missouri law permits a private individual to maintain an action for violations

---

**3.** *See* discussion of *Rice, supra,* in Note, *supra,* 54 Fordham L.Rev. at 248 *et seq.*

**4.** *See State v. Lawn King, Inc.,* 150 N.J.Super. 204, 375 A.2d 295, 302–03 (1977), *rev'd on other grounds,* 169 N.J.Super. 346, 404 A.2d 1215 (1979) *aff'd in* 84 N.J. 179, 417 A.2d 1025 (1980).

It has been held that, while state courts have no jurisdiction to construe or enforce federal

antitrust laws and that such jurisdiction is vested in the federal courts, *Union Oil Co. v. Chandler,* 4 Cal.App.3d 716, 84 Cal.Rptr. 756 (1970), state courts have jurisdiction when the pleadings avoid reference to the federal Sherman Act. *Caraway v. Ford Motor Co.,* 148 F.Supp. 776, (D.C.Mo.1957).

thereof and the circuit courts have jurisdiction to redress violations of the law. Sections 416.061.1, 416.121, R.S.Mo., 1986.

We believe it to be clear, therefore, that, as to the preemption doctrine, under the decisions of the Supreme Court of the United States and other authorities, the Sherman Act was not intended to and does not, absent specific state frustration of strong federal policy, preempt the Missouri state antitrust law. Our conclusion on this issue is not only based on authorities in other states, *Glasofer Motors v. Osterlund, Inc.*, *supra*, but is implied in Missouri judicial decisions. *See Fischer, Etc., supra*, 586 S.W.2d 310.

### IV.

As to the issue of interstate commerce, we conclude that the petition states a claim under Missouri Antitrust Law, and that the Missouri courts do not lack jurisdiction.

■ Interstate commerce must be more than obliquely or incidentally affected. *Mar–Farr Corporation v. Copley Press, Inc.*, 64 F.R.D. 456, 457 (N.D.Ill.1974). State antitrust regulation is not invalid merely because it regulates or affects interstate commerce. *R.E. Spriggs Co. v. Adolph Coors Company*, 37 Cal.App.3d 653, 112 Cal.Rptr. 585, 587 (1974); *Commonwealth v. McHugh*, 326 Mass. 249, 93 N.E.2d 751, 762 (1950). Where the state statute affects interstate commerce only incidentally, it will be applied unless the burden imposed on such commerce is clearly excessive in relation to local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); *Tober Foreign Motors v. Reiter Oldsmobile*, 376 Mass. 313, 381 N.E.2d 908, 913 (1978). The question is not whether the conduct complained of affects a business engaged in interstate commerce, but rather, whether the alleged conduct affects the "interstate commerce" of that business. *Gateway Associates, Inc. v. Essex–Costello, Inc.*, 380 F.Supp. 1089, 1093 (N.D.Ill. 1974).

Where the burden on interstate commerce so outweighs the state's interest, the state antitrust laws are not applicable. *See Matuszak v. Houston Oilers, Inc.*, 515 S.W.2d 725 (Tex.Civ.App.1974) (Texas antitrust laws have no application to professional football's reserve system); *Partee v. San Diego Chargers Football Co.*, 34 Cal. 3d 378, 194 Cal.Rptr. 367, 668 P.2d 674 (1983) (California Antitrust Cartwright Act not applicable to interstate activities because burden on interstate commerce outweighed state interests).

■ While the commerce clause is a limitation upon the power of the states, not every exercise of state power with some impact on interstate commerce is invalid. *Partee v. San Diego Chargers Football Co., supra*, 194 Cal.Rptr. at 370, 668 P.2d at 677, *citing, Edgar v. MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). The mere grant of commerce power to the federal government does not preclude state action, nor does Congressional power to act *ipso facto* negate state power. *R.E. Spriggs Co. v. Adolph Coors Company, supra*, 112 Cal.Rptr. at 589. Unless the burden on interstate commerce is unreasonable—where the state regulation substantially impedes the free flow of commerce—or the state regulation governs "those phases of the national commerce which, because of the need of national uniformity, demand their regulation, if any, be prescribed by a single authority," the state law may be applied. *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 767, 65 S.Ct. 1515, 1519, 89 L.Ed. 1915 (1945), *quoted in Partee, supra*, 194 Cal.Rptr. at 370, 668 P.2d at 677. A state court is not precluded from exercising jurisdiction to enforce its own antitrust law, unless there is a substantial or undue impact on interstate commerce or the enforcement is in conflict with national uniformity. *Cf., Hovenkamp, supra*, 58 Ind.L.J. at 385–390; *see Leader Theatre Corp. v. Randforce Amusement Corp.*, 186 Misc. 280, 283, 58 N.Y.S.2d 304, 307 (1945), *aff'd.*, 273 App.Div. 844, 76 N.Y. S.2d 846 (1948); *see* n. 644, 15 U.S.C.A.,

§ 1; *Exxon v. Governor of Maryland*, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) (state not without power to regulate retail gasoline); *M.I.I. v. E.F.I., Inc.*, 550 S.W.2d 401 (Tex.App.1977) (state statute violated even though contract had regulation to interstate commerce); *Commonwealth v. McHugh, supra*, 93 N.E.2d at 762 (federal statutes do not occupy entire field to exclusion of state law).

■ Summarizing the authorities, we believe that (1) a state antitrust law is not invalid merely because it affects commerce; (2) the fact that Congress has acted to prevent restraints in interstate commerce does not invalidate state legislation; and (3) although interstate commerce is affected, antitrust violations may also be prohibited by state antitrust law provided some state trade or commerce is affected and personal jurisdiction may be had. *See also*, 16L J.O. Von Kalinowski, *Antitrust Laws and Trade Regulation*, § 132.01 at 132–5 (1988). Unless, therefore, state legislation is in conflict with national policy, or unless the burden on interstate commerce is unreasonable or outweighs the state interest, Missouri state courts do not lack jurisdiction under its antitrust law, when, such interstate commerce has local consequences. *See Leader Theatre Corp. v. Randforce Etc. Corp., supra*, 58 N.Y.S.2d at 307.

As stated in *Commonwealth v. McHugh, supra*, 93 N.E.2d at 762, combinations or restraints of trade are of infinite form and variety.

Some expend their efforts almost wholly on intrastate commerce and are of only local interest and some almost wholly upon interstate commerce and so become matters of national concern, and there are all gradations between. If state laws [would] have no force as soon as interstate commerce begins to be affected, a very large area will be fenced off in which the states will be practically helpless to protect their citizens without, so far as we can perceive, any corresponding contribution to the national welfare.

In this appeal, we deal with a motion to dismiss a petition alleging violations of Missouri's antitrust law. In considering the sufficiency of a petition on a motion to dismiss, the court is to give the averments a liberal construction and accord the petition all the reasonable inferences deductible from the facts stated. *Scheibel v. Hillis*, 531 S.W.2d 285, 289 (Mo. banc 1976); *Laclede Gas Co. v. Hampton Speedway Co.*, 520 S.W.2d 625, 629 (Mo.App.1975); *Bennett v. Mallinckrodt, Inc., supra*, 698 S.W.2d at 865. A petition is to be held sufficient if it invokes principles of substantive law which entitle plaintiff to relief and alleges facts which inform the defendant of what plaintiff will attempt to establish at trial.

■ We believe appellant has met this minimum requirement. *Cf., Fischer, Etc. v. Forrest T. Jones & Co., supra*, 586 S.W.2d at 315. The petition here states sufficient facts to allege a violation of the antitrust law. Section 416.031, R.S.Mo.1986. The petition alleges certain general statements concerning interstate commerce, although the amendments by interlineation attempt to allege wholly intrastate activities. In either event, there is jurisdiction under state law. The allegations in the petition as to interstate commerce do not detail specific facts showing the amount of appellant's business, the amount of interstate business in relation to intrastate business, the share of the market, the defendant's conduct and how it affects the interstate commerce of that business, and many evidentiary details. In short, the petition does not show that appellant's business unreasonably affected interstate commerce or whether the defendants' conduct substantially affected the interstate commerce of that business. Whether the petition be construed as alleging certain activities in interstate commerce, or activities in intrastate commerce which affect interstate commerce, the allegations in the petition do not preclude the applicability of the Missouri Antitrust Law. Section 416.131.4, R.S.Mo. specifically provides that no action

under the Missouri Antitrust Law shall be barred on the ground that the "activity" or "conduct" complained of in any manner "affects" or "involves" interstate or foreign commerce.

## V.

We have reviewed the decisions relied upon by the respondents and conclude that they are not authoritative on the precise issue involved.

We therefore conclude that (1) the Missouri Antitrust Law continues to be a viable tool to achieve similar goals of federal and state antitrust laws, (2) the petition states a claim for relief, and (3) that the Missouri courts do not lack subject matter jurisdiction because a petition may be construed to allege matters involving or affecting interstate commerce.

Because we hold that (1) the Missouri Antitrust Law, ch. 416, R.S.Mo., is not, under these circumstances preempted by the Sherman Act, (2) the petition does not fail to allege a claim under the Missouri Antitrust Law, and (3) commerce need not be wholly intrastate in order to invoke and apply the principles of the Missouri Antitrust Law, the order of the trial court dismissing the petition for lack of subject matter jurisdiction is reversed, and the cause remanded for further proceedings.

JUDGMENT REVERSED AND CAUSE REMANDED.

DOWD, P.J., and SIMON, J., concur.