Kenneth S. HARTBARGER,
Plaintiff–Appellant,

v.

BURDEAU REAL ESTATE COMPANY,
John G. Burdeau, Jr. and David
Burdeau, Defendants–Respondents.

No. 51984.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 22, 1987.

Donald R. Raney, Godfrey, Ill., for plaintiff-appellant.

Davis Biggs, St. Louis, for defendants-respondents.

SATZ, Presiding Judge.

Plaintiff Kenneth Hartbarger sued defendants Burdeau Real Estate, David Burdeau and John G. Burdeau, Jr. for intentional interference with a business expectancy. The trial court granted defendants' motion for summary judgment. Plaintiff appeals. We affirm.

The record discloses the following facts. Lock Realty, a corporation owned by defendants John G. Burdeau, Sr.[1] and David Burdeau, leased property known as 5800 North Broadway to Global Waste, a corporation owned by plaintiff. The lease was for a period of five years. Lock Realty dissolved and assigned its interest in the lease to defendants John and David Burdeau. With defendants' consent, Global Waste subleased the premises to plaintiff. Global Waste then dissolved. Subsequently, plaintiff subleased the premises to Chad–Can, Inc., again with the consent of John Sr. and David Burdeau.

According to plaintiff's deposition, in May, 1985, four months before the lease was to expire, plaintiff asked Chad–Can if Chad–Can intended to renew its sublease with plaintiff. Chad–Can indicated to plaintiff it intended to renew the sublease, but no sublease was ever executed. Plaintiff then asked defendants to renew his lease for five additional years. Plaintiff and defendants agree that plaintiff wrote at least one letter[2] to defendants with this request, dated July 3, 1985, less than two months before the lease was to expire. Defendants responded by letter dated July 8, 1985, stating:

Before preparing a new lease for 5800 North Broadway, the Burdeau Real Estate Company would like a copy of your sublease to Chad–Can, Inc. Please send us a copy as soon as possible.

Defendants then approached Chad–Can and offered to lease the property directly to Chad–Can at Chad–Can's current rent for five years. Chad–Can accepted defendants' offer. The present action followed.

The parties discuss several issues on appeal. One is dispositive.

▪ An obviously essential element of a claim for wrongful interference with a business expectancy is the existence of a valid business expectancy. *E.g., Briner Electric Co. v. Sachs Electric Co.*, 680 S.W.2d 737, 740 (Mo.App.1984). The business relationship protected need not be evidenced by an enforceable contract, but there must be reasonable expectations of economic advantage or commercial relations. *E.g., Shafer v. Western Holding Corp.*, 673 S.W.2d 117, 121 (Mo.App.1984). In the present case, plaintiff contends the business expectancy was the sub-lease he was discussing or negotiating with Chad–Can. However, plaintiff had no basis to reasonably expect he could enter into a sublease with Chad–Can.

▪ Plaintiff's discussions or negotiations with his prospective sub-lessee, Chad–Can, were based upon what plaintiff perceived to be his "option rights" to renew his lease with defendants. These rights, however, were illusory. Under the terms of the "option", plaintiff had the "option to renew for an additional five (5) years under the terms and conditions to be negotiated at that time."[3] This language, however, is at best an agreement to negotiate and does not provide the essential elements of a

1. John G. Burdeau, Sr. is now deceased, and his estate is administered by John G. Burdeau, Jr., a defendant in this action.

2. In his deposition, plaintiff also stated he had written to request renewal in May or June of 1985, three to four months before the lease was to expire, but the letters are not in the legal file and the defendants do not acknowledge their existence.

3. "At the expiration of this lease, lessee shall have the option to renew for an additional five (5) years under the terms and conditions to be negotiated at that time. Lessee shall notify said Lessor six (6) months prior to expiration of its intention to enter into such negotiations."

written contract required by our Statute of Fraud for a lease. § 432.010 RSMo. 1986; *State ex rel. Johnson v. Blair,* 351 Mo. 1072, 174 S.W.2d 851, 854 (1943). *Crane v. Berman,* 297 S.W. 423, 424 (Mo.App.1927). Therefore, plaintiff's perceived rights to renew his lease were unenforceable. Moreover, defendants promise, as defined in the "option" clause, was nothing more than a promise to negotiate. Defendants were not obligated to agree to anything plaintiff requested. This indefiniteness and uncertainty about the terms of the renewal again render plaintiff's perceived rights unenforceable. *Rosenberg v. Gas Service Co.,* 363 S.W.2d 20, 26–27 (Mo.App.1962). In short, plaintiff had no basis to reasonably expect he could sublease the premises in question to Chad–Can.

Admittedly, there are jurisdictions which hold a defendant liable for interfering with a business relationship where the relationship between the plaintiff and third party is based upon a contract which is unenforceable because of the Statute of Frauds, a statute of limitation, uncertainty of terms or lack of consideration. *See, generally, Liability For Interference With Invalid or Unenforceable Contract,* 96 ALR 3rd 1294 (1979). These defenses, however, are personal to the plaintiff and a third party and, therefore, are not available to a defendant, a stranger to that contract. "The law ... does not object to the voluntary performance of agreements merely because it will not enforce them, and it indulges in the assumption that even unenforceable promises will be carried out if no third person interferes." Prosser and Keeton, Torts, § 129, pp. 994–996 (5th ed. 1984). The possibility the third party may raise one of these defenses simply bears on the issue of damages sustained. "The defendant ... is not, however, for that reason free to interfere with performance of the contract before it is avoided." Restatement (Second) of Torts, § 766, Comment f (1979).

Those fact situations, however, are quite different from the present facts. The un-

enforceable contract here was the so-called "option to renew" the lease between defendants and plaintiff. Defendants, obviously, are not strangers to that contract.[4] Without defendants' consent to forego an impregnable defense to plaintiff's renewal, plaintiff had no right or interest in the lease to sub lease to ·Chad–Can. Plaintiff had nothing to bargain with. Consequently, plaintiff had no basis to reasonably expect a commercial relation with Chad–Can which would be protected by law.

Judgment affirmed.

KELLY and CRIST, JJ., concur.

---

**4.** We do not address the issues raised where the defendant is a stranger both to the lease and prospective sub-lease.