KANTEL COMMUNICATIONS, INC., Appellant–Respondent,

v.

Clarence CASEY, Defendant,

and

James B. Hansen, Appellant,

and

Best Serve, Inc., Respondent.

No. WD 46908.

Missouri Court of Appeals, Western District.

Aug. 31, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 1993.

Application to Transfer Denied Dec. 21, 1993.

---

C.E. Weedman, Jr., Harrisonville, for appellant-respondent.

F. Allen Speck, Kansas City, Lynn K. Ballew, Harrisonville, for respondents-appellants.

Before FENNER, P.J., and SPINDEN and SMART, JJ.

SPINDEN, Judge.

When Best Serve, Inc., persuaded the Cass County sheriff to let it install a telephone system in the county jail, competitor Kantel Communications, Inc., sued Best Serve, Kantel's former sales manager, James Hansen, and Kantel's former salesman, Clarence Casey, for tortiously interfering with Kantel's business expectation. Kantel accused Best Serve of collaborating with Hansen and Casey to divert the Cass County business away from Kantel to Best Serve.

A jury found for Kantel and awarded it $300,000 in actual damages. It assessed $65,000 in punitive damages: $10,000 against Hansen, $5000 against Casey, and $50,000 against Best Serve. The trial court granted Best Serve's motion for judgment notwithstanding the verdict, and Kantel appeals. The trial court let stand a verdict against Hansen, and he appeals. Casey does not appeal. We reverse the trial court's judgment notwithstanding the verdict. We affirm the judgment against Hansen.

Hansen and Casey solicited orders for Kantel's installing telephone systems in municipal and county jails. During January 1990, Hansen convinced Maizie Wiggins, the Cass County jail administrator, and Cass County Sheriff Homer Foote to install a Kantel system in the jail. Foote signed a document purporting to be a contract with Kantel. Foote did not involve the county commission in the decision. Hansen did not inform Kantel management of the contract. He gave it to Casey, who held it.

Kantel fired Hansen as its sales manager on March 5. Hansen had known since the previous December that Kantel would fire him and immediately had begun planning, with Pete Lorenz, the organization of a firm, to be known as Best Serve, to compete with Kantel. On March 12, Best Serve was incorporated with Lorenz as its president. Best Serve hired Hansen on March 15.

In the meantime, in mid-March, Wiggins asked Hansen why Kantel had not installed the system. Hansen told her that Kantel had financial problems and could not fill orders. He arranged a meeting with Wiggins and Foote on March 28, 1990. Lorenz accompanied Hansen to the meeting. Lorenz knew that Hansen had solicited the Cass County business for Kantel. At the meeting, after Hansen again reported that Kantel was having financial problems, Foote threw the Kantel document in a trash can and signed a new document authorizing Best Serve to install a system in the county jail. Foote said at trial that he had decided to cancel the arrangement with Kantel before his meeting with Lorenz and Hansen because Kantel had

not installed the system within the time promised by Hansen. Best Serve installed phones in the jail during April 1990.

Kantel's president, Richard Thompson, learned on April 18, 1990, that his firm had lost the Cass County business. Thompson testified that Kantel did not have financial trouble and could have installed a system in the jail during February and March.

## I.

Kantel charges the trial court with error in sustaining Best Serve's motion for judgment n.o.v. The trial court explained its ruling:

> There was no evidence that Defendants Hansen or Casey were acting as agents for Defendant Best Serve, Inc., when Defendant Hansen called Maizie Wiggins in mid-March, 1990, and advised her that the plaintiff was having financial difficulties. There was, therefore, no evidence that any alleged wrongful acts of defendant Hansen or defendant Casey were performed in an agency relationship on behalf of Defendant Best Serve, Inc.

The trial court's ruling was reversible error.

## A.

■ Although the trial court's reasoning was correct, it overlooked the March 28 meeting of Hansen, Lorenz, Foote, and Wiggins. That meeting supports the jury's finding that Hansen was working in Best Serve's interest and contrary to his duty to Kantel. Best Serve acknowledges this in its brief: "Hansen was admittedly authorized to act on behalf of Best Serve at the March 28 meeting among Sheriff Foote, Hansen and Lorenz[.]" Moreover, the jury heard evidence that even before the March 28 meeting, Hansen and Lorenz had been discussing organization of a competing firm.

Best Serve argues, however, that the March 28 meeting was insignificant because Foote said that he had already made up his mind before the meeting to terminate his agreement with Kantel. This argument fails because the sheriff's change of mind was based on Hansen's misinformation, to which Best Serve acquiesced.

Hence, we conclude—from the March 28 meeting, Hansen's prior discussions with Lorenz about organizing a competitor for Kantel, and Hansen's and Casey's joining Best Serve after failing to inform Kantel management of the Cass County order—that the jury had sufficient evidence to render a verdict in favor of Kantel against Best Serve. "The existence of agency and the authority of an agent can be implied by proof of facts, circumstances, words, acts, and the conduct of the party to be charged with the agency.... The key to conduct is the knowing acquiescence of the principal in the past acts." *M.D. and Associates, Inc., v. Sears, Roebuck & Company,* 749 S.W.2d 454, 456 (Mo.App.1988).

## B.

■ Best Serve argues in the alternative that we should affirm the judgment n.o.v. because Kantel's petition failed to state a claim against Best Serve. It asserts that Kantel could not state a claim against it without alleging that Best Serve and Hansen had a master-servant relationship. It reasons that the petition did not aver that Best Serve had anything to do with Hansen's and Casey's actions and, therefore, the trial court should have dismissed the petition against it.

## 1.

Best Serve raised the issue for the first time in its motion for judgment n.o.v. It filed a motion to dismiss for failure to state a cause of action, but the only ground asserted in that motion was that the petition did not set out any facts supporting the contention that Best Serve acted "intentionally and without justification or excuse."

■ A litigant may challenge the sufficiency of a petition's allegations at any stage of a proceeding, even on appeal, but the challenger's burden becomes much greater if the challenge comes for the first time after judgment. " 'A petition will be found sufficient after judgment if, after allowing those reasonable inferences and matters necessarily implied from the facts stated, there [are] sufficient [allegations] to advise the defendant with reasonable certainty as to the

cause of action it is called upon to meet[.]' " *Sprung v. Negwer Materials, Inc.*, 775 S.W.2d 97, 101, 102 (Mo. banc 1989) (quoting *Sumpter v. J.E. Sieben Construction Company*, 492 S.W.2d 150, 153 (Mo.App.1973)).

Judged in light of this standard, we conclude that Kantel's petition was sufficient— barely. After the petition described Hansen's and Casey's actions in diverting the business from Kantel, the petition stated:

12. Defendant HANSEN and/or Defendant CASE . . . informed representatives of the Cass County Sheriff's Department that Plaintiff [Kantel] was unable to perform under the contract, was having financial problems, and caused Cass County to terminate the contract with Plaintiff, and enter into a contract for the installation of telephone equipment with Defendants.

13. Defendant HANSEN, in April, 1990, installed telephone equipment, acting on his own behalf and that of BEST SERVE, INC., in the Cass County Jail, to the detriment of Plaintiff.

14. A contract and contract expectancies existed between Plaintiff and Cass County, Missouri, which was breached by Defendant HANSEN and/or Defendant CASEY and Defendant BEST SERVE, INC., d/b/a BEST SERVE OF KANSAS, INC. and CELL BLOCK PHONES.

15. That Defendants took such actions intentionally and without justification or excuse.

Giving these allegations their reasonable inferences, they were adequate to advise Best Serve that Kantel was accusing it of participating with Hansen and Casey in the tortious interference of Kantel's expectancy of installing a telephone system in the Cass County jail. This becomes obvious from Best Serve's going to trial and defending the action without raising the issue of agency in any mode until after judgment.

### 2.

■ Best Serve argues that we should affirm the judgment n.o.v. because Kantel did not plead or prove the elements of interference with contract relations or a business expectancy. Those elements are:

(1) A contract or a valid business relationship or expectancy (not necessarily a contract); (2) Defendant's knowledge of the contract or relationship; (3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) The absence of justification; and, (5) Damages resulting from defendant's conduct.

*Fischer, Spuhl, Herzwurm & Associates, Inc. v. Forest T. Jones & Company*, 586 S.W.2d 310, 315 (Mo. banc 1979).

### a.

■ Best Serve argues that Kantel did not plead or prove the first element, a valid contract or contract expectancy with Cass County. Kantel's petition alleged that Hansen "submitted a contract to HOMER L. FOOTE . . . for the installation of phones in the Cass County Jail, and Sheriff FOOTE signed said contract[.]" Kantel also pleaded that "[a] contract or contract expectancies existed between [Kantel] and Cass County[.]" Kantel proved a valid business expectancy.

### (1)

■ Kantel established that it had business expectations with Cass County based on the document signed by Foote in January, even if that document was not a contract. The rights and expectations created by the document flowed immediately to Kantel. That Kantel was unaware of the document did not deprive it of any rights or expectations. A reasonable expectation of economic advantage or commercial relation will support a claim for wrongful interference with business expectancy even in the face of an unenforceable contract. *Hartbarger v. Burdeau Real Estate Company*, 741 S.W.2d 309, 310 (Mo.App.1987).

### (2)

Best Serve argues that the document signed by Foote did not create a business expectancy because it did not conform to the requirements of § 432.070, RSMo 1986. That statute provides:

No county . . . shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by

law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

Best Serve reasons that because Foote could not bind Cass County by signing a document not satisfying the requirements of § 432.070—even under theories of estoppel, waiver, ratification or quantum meruit—Kantel never had a legitimate expectation of doing business with Cass County.

Section 432.070's purpose is to protect the county. "[D]efendants, sued in their private, individual capacities can take no benefit from it. . . . It was not designed to insulate individuals from liability for their tortious acts." *Casterline v. Stuerman*, 588 S.W.2d 86, 88 (Mo.App.1979).

### (3)

Best Serve argues that Kantel did not have a valid business expectancy because Kantel did not get the system installed by the deadline set out in the document signed by Foote. (The evidence is in dispute as to whether the deadline was two weeks or 30 days.) The argument is disingenuous given the affirmative steps by Hansen and Casey to keep Kantel from knowing that Hansen had obtained Foote's agreement to install a Kantel system.

### b.

■ Best Serve also argues that Kantel did not plead or prove the third element, that Best Serve induced or caused the breach of contract or relationship with Cass County. As made clear by its brief, Best Serve ties its argument to "Kantel's failure to allege conduct on the party of Best Serve or authority of Hansen or Casey to act on behalf of Best Serve[.]" For the same reasons outlined in I.B., we reject the argument.

### c.

■ Best Serve argues that Kantel did not plead or prove the fourth element, an absence of justification. Best Serve raised this issue in its motion to dismiss which the trial court overruled.

Although Kantel's petition averred that "Defendants" acted "intentionally and without justification or excuse," Best Serve suggests that "[t]his is clearly a legal conclusion and must be disregarded. Kantel . . . failed . . . to plead any facts which would support the element of absence of justification."

■ A petition is sufficient if it invokes substantial principles of law which entitle the plaintiff to relief and informs the defendant of what the plaintiff will attempt to establish at trial. *Fischer*, 586 S.W.2d at 316. "A pleader is required to state only the ultimate facts and it is not necessary to plead the facts or circumstances by which the ultimate facts will be established." *Scheibel v. Hillis*, 531 S.W.2d 285, 290 (Mo. banc 1976). The *Scheibel* court further instructed, "Plaintiff could be compelled by motion . . . to plead more specifically or by interrogatories to give more information . . . but this does not mean the petition does not state a cause of action[.]" *Id.*

In *Buller v. Pulitzer Publishing Company*, 684 S.W.2d 473, 480 (Mo.App.1984), this court's Eastern District construed a petition alleging tortious interference with business expectancies in which the plaintiff averred, "Defendants had no justification for such publication[.]" In considering a contention that this was not a sufficient pleading, the *Buller* court said, "[I]n light of *Scheibel*, . . . this allegation sufficiently establishes this element of the tort[.]" *Id.*

■ Indeed, the Supreme Court, in *Fischer*, searched a plaintiff's petition for all the elements of tortious interference with a business expectancy. The *Fischer* court noted, "The count also alleges that respondents' acts were intentional and without justification[.]" 586 S.W.2d at 315. The *Fischer* court concluded, "Appellant's petition invokes the substantive principles of law which entitled appellants to relief and inform the respondents of what appellants will attempt to

establish at trial." *Id.* at 316. We reach the same conclusion in this case.[1]

Best Serve cites *Briner Electric Company v. Sachs Electric Company*, 680 S.W.2d 737, 740, 741 (Mo.App.1984), for the proposition that, to establish an absence of justification, a plaintiff must show that the defendant used an improper or wrongful means. We agree. Kantel had to show that Best Serve's actions were "independently wrongful, notwithstanding injury caused by the interference." *Community Title v. Roosevelt Federal Savings and Loan Association*, 796 S.W.2d 369, 373 (Mo. banc 1990).

▪ As we previously noted, the jury heard sufficient evidence to conclude that Hansen and Casey were working for Best Serve's interest while still employed by Kantel. It also heard evidence suggesting that Hansen's statements concerning Kantel's inability to install a system in February and March 1990 were untrue. Foote acknowledged that he repudiated the agreement with Kantel and signed the Best Serve agreement because of Hansen's statements. The jury had sufficient evidence from which to conclude that Best Serve was aware of Hansen's misdeeds and took advantage of them to obtain the contract.

▪ Hansen violated his duty of loyalty to Kantel when he represented himself as Kantel's agent while acting contrary to Kantel's interests. *Utlaut v. Glick Real Estate Company*, 246 S.W.2d 760, 763 (Mo.1952). The jury was justified in concluding that Best Serve was more than passively aware of this disloyalty; it was an active participant, as evidenced by the March 28 meeting.

### C.

▪ Best Serve contends that Kantel's brief violated Rule 84.04 and should be dismissed. It argues that Kantel's statement of facts is distorted in violation of Rule 84.04(c) which requires a "fair and concise statement of the facts relevant to the questions presented for determination without argument." The point has no merit. "In reviewing a trial court's denial of a motion notwithstanding the verdict, we examine the evidence in the light most favorable to the party against whom the judgment is sought." *Burnett v. Griffith*, 769 S.W.2d 780, 783 (Mo. banc 1989). Kantel properly asserted only facts supporting the jury's verdict.

### II.

▪ Hansen appeals of the trial court's denial of his motion for directed verdict.[2] He repeats Best Serve's arguments that Kantel did not prove it had a contract or contract expectancy, but with the novel twist that the only business expectancy Kantel had was with Foote and the county jail. This is not cause for recovery, Hansen argues, because Foote had no authority to act unilaterally, without authorization by the county commission, to let anyone install the system. He also notes that the jury instruction was phrased in terms of a contract expectancy with "Cass County," as opposed to Foote or the jail, and no evidence supported a finding that Kantel had a expectancy of doing business with Cass County.

### A.

Hansen argues that Sheriff Foote's signature on the purported contract, without the county commission's approval, was insuffi-

---

1. We recognize a line of cases reaching the opposite conclusion. See *Friedman v. Edward L. Bakewell, Inc.*, 654 S.W.2d 367 (Mo.App.1984). While Friedman cites Fischer for other propositions, it ignores Fischer's conclusion that the allegation "without justification" is sufficient and relies instead on an earlier Supreme Court decision, *Cady v. Hartford Accident & Indem. Co.*, 439 S.W.2d 483 (Mo.1969), to conclude that "without justification" is an unacceptable conclusion of law. We deem the later decision, Fischer, and Buller to be the correct precedent.

2. Hansen also urges dismissal of Kantel's brief. He asserts that it violates Rule 84.04 because it does not contain a jurisdictional statement, statement of facts, or any recital to confirm the adoption of Hansen's statement of facts. We find no requirement that a respondent's brief contain a jurisdictional statement. We assume Kantel's silence indicates his adoption of Hansen's statement of facts. The brief's lack of conformity to Rule 84.04 is not sufficient to warrant the harsh remedy of dismissal. *Higgins v. Missouri State Employees Retirement System*, 760 S.W.2d 449 (Mo.App.), cert. denied 490 U.S. 1047, 109 S.Ct. 1956, 104 L.Ed.2d 425 (1988).

cient to create a valid contract with Cass County. *See Briner Electric Company,* 680 S.W.2d at 740. While we do not disagree with the point, it does not aid Hansen. Kantel presented evidence of a reasonable business expectancy. Kantel demonstrated that its method of accepting orders was the normal course of business. It was the method used by Best Serve. A reasonable expectation of economic advantage or commercial relation, even in the absence of an enforceable contract, will support a claim for wrongful interference with a business expectancy. *Hartbarger v. Burdeau Real Estate Company,* 741 S.W.2d at 310.

### B.

■ Hansen complains about the verdict-directing instruction. The instruction said:

Your verdict must be for plaintiff if you believe:

First, a valid business expectancy existed between plaintiff and CASS COUNTY, MISSOURI, of which defendants had knowledge, which was terminated by CASS COUNTY, MISSOURI, and

Second, defendants caused CASS COUNTY, MISSOURI, to terminate its business expectancy with plaintiff, and

Third, defendants did so intentionally and without justification or excuse, and

Fourth, plaintiff was thereby damaged.

### 1.

■ "In determining whether an instruction should have been given or withheld based on evidence presented at trial, the appellate court views all evidence in the light most favorable to submission on the instruction." *Childers v. State Farm Fire and Casualty Co.,* 799 S.W.2d 138, 142 (Mo.App. 1990). To constitute reversible error, a mistaken instruction must have prejudiced the party challenging the mistake. *Id.*

In describing the matter at trial, the parties used the terms "the Cass County contract," "the Cass County deal," "the Cass County account," and "the Cass County Jail phone system." Part of Kantel's revenue from the system was to go to Cass County,

and, indeed, part of Best Serve's revenue did go to the county's coffers. The jury had no reason to be confused. We discern no prejudice to Hansen. *See White v. Land Clearance for Redevelopment Authority,* 841 S.W.2d 691, 697 (Mo.App.1992).

### 2.

■ Hansen argues that because the instruction improperly hypothesized interference with "a business expectancy" when Kantel pleaded interference with an existent contract or contract expectancies, the instruction was erroneous. Again, we fail to discern any prejudice to Hansen. As noted above, the parties, throughout the trial, referred to the agreement as a contract without objection.

### III.

■ Hansen argues that the trial court wrongfully denied his motion for a mistrial because Kantel's witnesses described Hansen's conduct as "tortious interference" and "interference." The statements generally were unresponsive, unsolicited statements on the law, or were responses to counsel's leading questions.

■ "When a witness unexpectedly volunteers inadmissible information, the action called for rests in the trial court's discretion." *State v. Miller,* 680 S.W.2d 253, 255 (Mo.App. 1984). The trial court has much discretion to determine the appropriate remedy. *Luthy v. Denny's, Inc.,* 782 S.W.2d 661, 667 (Mo.App. 1989). We discern no abuse of discretion. The trial court ruled on every objection made by Hansen and admonished the jury to disregard the witness' statements when the court deemed it appropriate. Hansen has not demonstrated any prejudice.

### IV.

■ Hansen contends that the trial court erred by not letting him read a portion of Thompson's deposition to the jury. We disagree.

Hansen told the trial court that he offered the passage to prove that other competitors, besides Best Serve, were vying for the Cass County business and that this was pertinent

to damages. Although the testimony consisted of what others had told Thompson, Hansen argued that it was admissible because he was not offering it for the truth of the matter. If that be the case, it would not be pertinent to damages or any other issue. The trial court properly excluded it as either hearsay or irrelevant. Moreover, Thompson had already testified that other competitors were vying for the business. It was cumulative.

For these reasons, we reverse the trial court's judgment n.o.v. for Best Serve and order that judgment for Kantel against Best Serve be reinstated. We affirm the trial court's judgment in all other respects.

All concur.